AURELIA LAWYER, Respondent, *v.* ALICE E. WHITE et al., Appellants.

**Evidence — when not objectionable under section 829 of Code of Civil Procedure.**

In an action of ejectment brought by a grantee, claiming the premises in dispute, under a deed from a deceased grantor which, after its execution, had been destroyed by the grantor and another deed given by him to the defendant, the plaintiff produced evidence of the execution and delivery of the original deed to her, of her possession thereof and of such defendant's knowledge and admissions of these facts. The defendant denied that she had ever seen the deed to the plaintiff. Thereupon, and against defendant's objection that such evidence was incompetent under section 829 of the Code of Civil Procedure, the plaintiff was permitted to testify to conversations with the defendant during which she had exhibited the deed of the property to defendant and had read its contents to her. *Held,* that the evidence was properly received: that plaintiff's testimony did not relate to any communication or transaction had personally between herself and her deceased grantor, but was of facts which showed that the defendant had testified falsely in denying knowledge of the deed. Although such evidence went to prove that there must have been a delivery of the deed, the statute does not forbid evidence of extraneous facts and circumstances from which a delivery of the deed by the deceased might be inferred.

*Lawyer* v. *White,* 132 App. Div. 943, affirmed.

(Argued March 30, 1910; decided April 26, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 11, 1909, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. C. Emerson* and *V. K. Kellogg* for appellants. The court erred in permitting the plaintiff to testify to conversations with her mother and transactions with Judge Walts, because they involved personal transactions with her deceased

grantor, John M. Cowan. (*Clift* v. *Moses*, 112 N. Y. 427; *Nay* v. *Curley*, 113 N. Y. 575; *Tooley* v. *Bacon*, 70 N. Y. 34; *Maverick* v. *Marvel*, 90 N. Y. 656; *Hullard* v. *Smith*, 175 N. Y. 375; *Matter of Bernsee*, 141 N. Y. 389; *Holcomb* v. *Holcomb*, 95 N. Y. 316; *Matter of Eysaman*, 113 N. Y. 62; *Richardson* v. *Emmett*, 170 N. Y. 412; *Jones* v. *Riley*, 174 N. Y. 98; *Strough* v. *Wilder*, 119 N. Y. 535.)

*N. F. Breen* for respondent. The court committed no error in permitting the plaintiff, under certain limitations, to testify to transactions and conversations with her mother and describe the deed that was left with Judge Walts for safe-keeping and which she saw there when she called with Mrs. Adams. (*Pinney* v. *Orth*, 88 N. Y. 447; *Holcomb* v. *Campbell*, 118 N. Y. 47; *Lewis* v. *Merritt*, 98 N. Y. 210; *Hamlin* v. *Stevens*, 59 App. Div. 522; *Cowan* v. *Davenport*, 30 App. Div. 130; *Funson* v. *Salisbury*, 15 App. Div. 214.) The evidence of the plaintiff as to the conversations had with her mother and also the transaction with Judge Walts were competent, even though they did by inference prove the identity and delivery of the deed to plaintiff. (*Carey* v. *White*, 59 N. Y. 336; *Simmons* v. *Havens*, 101 N. Y. 427; *Hoag* v. *Wright*, 174 N. Y. 36; *Boyd* v. *Boyd*, 21 App. Div. 361; *Goetting* v. *Weber*, 71 App. Div. 503.)

GRAY, J. The action is in ejectment, to recover the possession of a farm. The plaintiff had a verdict in her favor and the judgment upon that verdict has been affirmed at the Appellate Division, by the unanimous vote of the justices. The appeal to this court presents a question, arising upon exceptions to the admission of the plaintiff's testimony of conversations between herself and the defendant. The plaintiff and the original defendant, upon whose death, pending the action, the present defendants were brought in, claimed title by deeds from the same grantor. Cowan, their grantor, was the brother of the defendant and the plaintiff was a daughter of the defendant and his niece. In 1891, conced-

edly, he had executed a deed of the farm to the plaintiff. He
was unmarried and she was his favorite niece, and in his will,
made in 1892, she was sole legatee of his personal estate.
According to the testimony of Walts, a lawyer, the deed to
the plaintiff of the farm was drawn by him ; it was kept in
his office after its execution ; in 1892, it was destroyed by
Cowan, at a time when he executed a mortgage upon the
property to secure a debt owing by him to a creditor, and, the
same day, a deed of the same property was executed to Mrs.
Lawyer, the defendant. This witness said " there never was
any other deed in my possession from Cowan to the plaintiff."
Inasmuch as the deed had been destroyed and could not,
therefore, be produced by the plaintiff, it became necessary
for her to prove her possession of the property through the
delivery of the deed to her; a fact which, if established,
would render ineffective the subsequent deed to Mrs. Lawyer.
For this purpose, the plaintiff resorted to the evidence of wit-
nesses ; from whose testimony such facts and circumstances
were made to appear as to justify a finding by the jury that
the deed had been delivered to her and, therefore, that she
was entitled to the possession of the property. If, in the
admission of such evidence, no error has been committed,
then, of course, the judgment is beyond attack in this court.
The only assignment of error, of sufficient importance to
demand consideration is, as already observed, the admission of
plaintiff's evidence of conversations with the defendant. Two
witnesses were called, who testified to having seen in the
plaintiff's possession, in the summer of 1891, a paper upon
which appeared the words " deed " and " John M. Cowan
to his niece Aurelia Lawyer." One of these witnesses saw
the same paper in Walts' office a few months afterwards,
upon an occasion when, being with the plaintiff and having
met Cowan, the plaintiff was asked by him to go there to see
the deed, so that " in case anything happened to him, she
would have a witness that the deed was there." When at
Walts' office, the witness was shown the deed and observed
Cowan's signature to it and the acknowledgment before a

commissioner of deeds. The other witness saw the deed, again, in the fall, at a time when Cowan came to plaintiff's house for it, saying that Walts told him to get it, as there " was something he wanted to fix in it," whereupon she gave it to him. She called three other witnesses to testify to their conversations with Mrs. Lawyer upon the subject of the deed. Each of them testified to statements by Mrs. Lawyer that Cowan had given a deed of the property to the plaintiff. One of them said that Mrs. Lawyer had told her that the plaintiff " had had the deed in the house quite a long time and that she had read it to her." Another said that Mrs. Lawyer told her that her brother had given the plaintiff the deed of the farm, " because Doll (the plaintiff) was his favorite." The plaintiff called the defendant, Mrs. Lawyer, to the stand and she testified that upon the occasion of a call by their clergy-man, some time after Cowan's death, ·her daughter told him of her uncle having given her the farm and that she, the wit-ness, had said " if she had done as she ought to have . done, she would have had the farm. He was in debt and she would not sign any mortgage, so he destroyed the deed and raised the mortgage and made the deed over to me." Again, the witness testified that upon an occasion, when she, with her husband, Cowan's creditor and others were present in Walts' office, " they claimed if Doll did not sign the mortgage, it would not be good for anything " and that, upon the plain-tiff's refusing to sign, her brother (Cowan) had given way to his feelings by crying. She testified that she " never saw any deed or anything of the kind made by John M. Cowan to Aurelia (plaintiff), but I know they said he drawed papers to her. That was before he went to work and made the deed to me."

At that stage of the case, the. situation was this, while the plaintiff had succeeded in showing by evidence, more or less con-clusive, that she had had possession of a deed made by Cowan to her and that her mother had admitted to others that she had known of a conveyance of the farm to her daughter in the latter's possession, yet, her mother had denied ever seeing

any such deed.   Thereupon, the plaintiff took the stand, as a
witness in her own behalf, and gave evidence of conversations
in 1891 between her mother and herself with reference to the
farm.   The evidence was admitted, over the objection of the
defendants that it was incompetent under section 829 of the
Code of Civil Procedure, and whether her testimony was
admissible is the question for our consideration.   She was
not asked to testify to any transaction, or communication,
had, personally, between herself and Cowan, the deceased
grantor.   She was permitted to testify to conversations
with her mother about a deed of the farm, at the time,
in her possession, and the argument is that such testimony
involved, indirectly, proof of a personal transaction with
the deceased and, therefore, became inadmissible.   I do not
think that the provisions of section 829 have any application
to the case.   The witness was not attempting to establish her
title under the deed by testifying to any communication
between herself and the deceased, or to any personal transac-
tions between them.   She was testifying to conversations
between herself and her mother, during which she had exhib-
ited her uncle's deed of the farm to her, while in her posses-
sion, and had read out its contents.   Her testimony was of
facts occurring in their intercourse, which showed that her
mother had testified falsely in denying knowledge of the deed.
It went to prove admissions and declarations by her mother
negativing her previous testimony upon the subject.   It is
true that her evidence went to prove that there must have
been a delivery of the deed; but the statute does not forbid
evidence of extraneous facts and circumstances, from which
a delivery by the deceased might be inferred.   The issue
between the plaintiff and her mother was whether the latter's
deed was of any validity and it became a question of veracity
between them whether the latter had not known, before she
ever received her own deed, or, indeed, before it had ever
been executed, that her daughter was the grantee of the prop-
erty.   Each claimed the right to the possession under sepa-
rate deeds from the same grantor.   The defendant had hers;

the plaintiff's had been destroyed.   If defendant had known of the plaintiff's superior title, through a perfected grant, the plaintiff was entitled to show it by any declarations of the defendant, from which that knowledge would be evidenced. They stood before the tribunal, equally, entitled to make out a case from whatever proof, of a competent nature, was attainable, and if the jurors believed the plaintiff's evidence and her testimony of what came to her mother's knowledge, I can conceive of no legal rule, or principle, which has been violated.

The extent of the operation of section 829 has been much discussed and it is needless to review the discussion now. For some time, it was doubted how far its provisions extended to such cases as where a person offered to testify to conversations, or transactions, between persons since deceased and a third person in the presence, or hearing, of the witness.   It was, finally, held that they might not be testified to by such witness, if he participated in the transaction, or conversation, or was in any way a party to it, by reference, or otherwise. In *Hutton* v. *Smith*, (175 N. Y. 375), that question was considered and the cases reviewed.   But the present case involves no such close question.   The purpose of this provision of the Code is to prevent undue advantage and that purpose is to be borne in mind when questions arise.   (*Wadsworth* v. *Heermans*, 85 N. Y. 639.)   If we are to give to the language " concerning a personal transaction " so broad a signification, as to exclude the evidence of facts not constituting the transaction and not proving any communications between the parties, and which had nothing to do with their negotiations, we should be using the Code provision as an instrument to work inequality and, therefore, injustice.   (*Hard* v. *Ashley*, 117 N. Y. 606, at p. 618.)

I advise the affirmance of the judgment.

CULLEN, Ch. J., EDWARD T. BARTLETT, WILLARD BARTLETT, and CHASE, JJ., concur ; VANN, J., not voting ; HAIGHT, J., absent.

Judgment affirmed, with costs.