ELIZA E. GRISWOLD et al., as Administrators of the Estate of OSCAR F. RIDGEWAY, Deceased, Respondents, *v.* LOUISA B. HART, as Administratrix of the Estate of FRED C. HART, Deceased, Appellant.

Evidence — section 829 of Code of Civil Procedure — extent and application of rule precluding testimony of interested witness as to personal transactions or conversations with a decedent.

1. On the trial of an action to determine title to a bank book and certificates of deposit where the issue was as to whether they were a gift from the father to his daughter, both being deceased, the husband of the deceased daughter who succeeded to her title was allowed to testify as to a transaction or conversation between his wife and her father at which it is claimed the father gave the daughter the instrument in suit and the credits which they represented. The witness testified that in this transaction and conversation he took no part, but accidentally witnessed it as he passed through the room in which his wife and her father were. This evidence was admitted over the objection of the plaintiffs. *Held*, that the witness was incompetent under section 829 of the Code of Civil Procedure.

2. On review of the authorities under section 829 of the Code of Civil Procedure, relative to the right of an interested witness to testify in his own behalf against the estate of a decedent as to a personal communication or transaction with such decedent, *held*, that

the statute excludes the testimony of such witness to any knowledge which he has gained by the use of his senses from the personal presence of the deceased.

*Griswold* v. *Hart,* 142 App. Div. 106, affirmed.

(Argued March 25, 1912; decided May 7, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 7, 1911, reversing a judgment in favor of defendant entered upon a verdict and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. W. Personius* for appellant. The defendant Fred C. Hart was a competent witness under section 829 of the Code. He was interested in the event, but he did not testify to a personal transaction or communication between himself and the deceased. (*Simmons* v. *Sisson,* 26 N. Y. 264; *O'Brien* v. *Weiler,* 140 N. Y. 281; *Hutton* v. *Smith,* 175 N. Y. 375; *Lawyer* v. *White,* 198 N. Y. 318; *Cary* v. *White,* 59 N. Y. 336; *Lobdell* v. *Lobdell,* 36 N. Y. 327; *Kraushaar* v. *Myer,* 72 N. Y. 602; *Simmons* v. *Havens,* 101 N. Y. 427; *Farrar* v. *Farmers, etc., Co.,* 85 App. Div. 367; *Matter of Andrews,* 97 App. Div. 431; *Spindler* v. *Gibson,* 75 App. Div. 446.)

*E. J. Baldwin* for respondents. Fred C. Hart was not a competent witness to testify to the alleged gift, and his testimony was incompetent under section 829 of the Code of Civil Procedure. (*Price* v. *Price,* 33 Hun, 69; *Wadsworth* v. *Heermans,* 85 N. Y. 639; *Hard* v. *Ashley,* 117 N. Y. 606; *Lawyer* v. *White,* 198 N. Y. 318; *Matter of Andrews,* 97 App. Div. 429; *Holcomb* v. *Holcomb,* 95 N. Y. 327; *Van Vechten* v. *Van Vechten,* 65 Hun, 215; *Boyd* v. *Boyd,* 164 N. Y. 234; *Matter of Eysaman,* 113 N. Y. 62; *Matter of Bernsee,* 141 N. Y. 380.)

CULLEN, Ch. J. The action was brought to recover two certificates of deposit, one for a thousand dollars and the other for five hundred dollars, and a deposit book in the Mechanics Society, a savings bank, all of which instruments were in the name of the plaintiff's intestate, but in the possession of the defendant's intestate, who was alive and testified on the trial in his own behalf, but died pending this appeal. There was no indorsement or written assignment of the securities. The defendant's intestate had married a daughter of the plaintiff's intestate. She died intestate without issue before the death of her father. After the death of the father his representatives brought this action to recover possession of the instruments mentioned. The defendant's intestate claimed to own them by virtue of a gift made by the plaintiff's intestate to his daughter, to whose title the witness had succeeded by virtue of his marital rights, and on the trial was permitted to testify to a transaction or conversation between his wife and her father at which the father gave the daughter the instruments in suit and the credits which they represented. Hart testified that in this transaction and conversation he took no part, but accidentally witnessed it as he passed through the room in which his wife and her father were. The evidence was admitted over the objection of the plaintiffs, who contended that the witness was incompetent under section 829 of the Code of Civil Procedure. The Appellate Division by a divided court held the admission of this testimony erroneous, and for the error reversed the judgment and granted a new trial.

This section or its predecessor, section 399 of the Code of Procedure, has been in force for over half a century, and its interpretation the subject of numerous decisions in this and the other courts of the state. It might, therefore, be expected that the proper construction of the statutory provision had been authoritatively determined. Unfortunately the reverse is the case. The decisions are in irreconcilable conflict. The material part of the sec

tion of the present Code provision is as follows: "Upon the trial of an action or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title, by assignment or otherwise, shall not be examined as a witness, in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person, or the committee of a lunatic, or a person deriving his title or interest from, through or under a deceased person or lunatic, by assignment or otherwise; concerning a personal transaction or communication between the witness and the deceased person or lunatic; * * *." In *Simmons* v. *Sisson* (26 N. Y. 264) it was held that section 399 of the old Code did not prohibit a party sued by the personal representatives of deceased from testifying to a conversation overheard by him between the deceased and a third person. To the same effect is *Lobdell* v. *Lobdell* (36 N. Y. 327). So also is the opinion in *Cary* v. *White* (59 N. Y. 336), but it is to be remarked that the opinion received the concurrence of but one other member of the court, and that there were other grounds on which the decision might have proceeded. *Hildebrant* v. *Crawford* (65 N. Y. 107) follows the opinion in *Cary* v. *White* (*supra*). In *Badger* v. *Badger* (88 N. Y. 546) it was held that a conversation between the deceased and a third party, to which the witness was merely a listener, was not a personal transaction or conversation between her and the deceased, and that as to it she was a competent witness. Thus far the current of authority had been uniform and had it continued so there would be no difficulty in the disposition of this case. But at this point a marked change seems to have occurred in the views of this court. In *Holcomb* v. *Holcomb* (95 N. Y. 316) the action was to set aside an assignment of a bond and mortgage alleged to have been secured by the defend-

ant from the plaintiff's intestate through undue influence and because at the time the deceased was of unsound mind. On the trial one of the next of kin of deceased, and, therefore, interested in the success of the suit, was allowed to testify, against the objection that the witness was incompetent under section 829 of the Code, to certain communications with the deceased and also to occurrences transpiring in his presence. The admission of this evidence was held error and the judgment below reversed. In the opinion of Judge DANFORTH it is said: "The policy of the statute excludes the evidence of an interested witness concerning, 1st: Any transaction between himself and a deceased person, or in which the witness in any manner participated; 2d: All communications between the person deceased and the witness, including communications in the presence or hearing of the witness, if he in any way was a party thereto, or communications to either one of two or more persons, if all were interested." (p. 326.) If this statement hád covered the questions decided by the case the departure from the previous decisions would be somewhat limited. But then the learned judge goes on to discuss the particular evidence admitted in the case and holds that the testimony of the witness as to the deceased having spasms or fits was a violation of the statutory inhibition. He further held that the witness was not competent to testify as to what he heard his deceased father say. The learned judge said: "His testimony is not made admissible because his father did not solicit the interview, and was even ignorant of his presence. The words, when spoken, became a communication which he received. It was then a communication to him." (p. 327.). It is very clear that the *Holcomb* case overrules the doctrine of the earlier cases, that an interested witness may testify to a conversation or occurrence in which he took no part. In *Simmons* v. *Havens* (101 N. Y. 427) *Cary* v. *White* (*supra*) is followed, but no reference is made to the much more

recent case of *Holcomb* v. *Holcomb* (*supra*). *Matter of Eysaman* (113 N. Y. 62, 73), was a proceeding for the probate of a will. Evidence similar to that admitted in the *Holcomb* case was held to have been erroneously received and the doctrine of that case, that the testimony of interested witnesses, " as to conduct and actions of the deceased, tending to show his enfeebled and dependent condition, and as to statements made by him although not addressed to the witness, and made in ignorance of his presence" was improper, was reaffirmed. The next case is that of *Matter of Will of Dunham* (121 N. Y. 575). The proceeding was for the probate of a codicil to a will contested on the ground of undue influence, restraint and mental incapacity. The question was as to the competency of the witness, who was residuary legatee under the will, and interested in the defeat of the codicil, to testify to communications with the deceased or made in his presence. The testimony was held incompetent, Judge GRAY writing: " Therefore, while, as to any communications or transactions with the witness, the proposed evidence was plainly enough inhibited by section 829 of the Code, his testimony as to the conversations, or transactions, while he was present in the room, had between the deceased and other persons, was, under the circumstances, inadmissible." (p. 577.) In *Devlin* v. *Greenwich Savings Bank* (125 N. Y. 756) it was said: " It is doubtful if the witness (the plaintiff in the action) could be permitted to testify as to a conversation in her presence between her uncle and Father Carew, relative to the gift she claimed. The cases of *Eysaman's Will* (113 N. Y. 62) and *Dunham's Will* (121 N. Y. 575) have very greatly limited the old rule in regard to such conversations." (p. 758.) The decision proceeded on another ground, so it must be admitted that the excerpt quoted was *obiter*. *Petrie* v. *Petrie* (126 N. Y. 683) was an action in partition and the appeal involved the competency of the plaintiff to testify to a conversation she overheard between

her father and a third person. It was held that the objectionable testimony was wholly immaterial on the point upon which the case was decided, and, therefore, should be disregarded. But the court said: "The ruling of the trial court upon the objection to the above question would present a somewhat important point under the construction which this court has given to section 829, in recent cases, if it could be held that the answers in any degree affected the result. (*Holcomb* v. *Holcomb*, 95 N. Y. 326; *Matter of Eysaman*, 113 id. 72; *Matter of Dunham*, 121 id. 575.)" The next case in this court was that of *O'Brien* v. *Weiler* (140 N. Y. 281), in which there was a return to the old doctrine. The action was to recover the amount of a savings bank deposit standing in the name of the plaintiff's testator as guardian for his daughter. The widow of the deceased, though interested in the action, was held a competent witness to a transaction between the deceased and another in her presence in which she took no part. The court cited *Cary* v. *White* (*supra*) and *Simmons* v. *Havens* (*supra*), but made no allusion to the later decisions. In the very next volume, in *Matter of Bernsee* (141 N. Y. 389, 392) which was a proceeding for the probate of a will, it was held that a legatee under the will was an incompetent witness to testify to any conversation or transaction in his presence at the time of the execution of the will. It was there said by Chief Judge ANDREWS: "What occurred at that time was a transaction between the testatrix and the witness, within the meaning of section 829 of the Code, although he took no actual part in the conversation and it was wholly between the testatrix and the attesting witnesses. If active participation in the conversation was necessary to exclude an interested witness, and he should as an observer be permitted to testify to transactions in form between the deceased and third persons, although such transactions were in his interest, it would furnish an easy and convenient method in every

case of evading the statute. The decisions have enforced
the spirit of the statute by excluding such evidence, and
have treated transactions between the deceased and third
persons in the presence of interested parties as if the wit-
ness actually participated therein. (*Holcomb* v. *Holcomb*,
95 N. Y. 316; *Matter of Eysaman*, 113 id. 62; *Matter of
Dunham*, 121 id. 575.)" *Boyd* v. *Boyd* (164 N. Y. 234)
is referred to only because the opinion in that case cites
the *Holcomb* case and the others to the same effect as
being authoritative on the construction of section 829 of
the Code. In *Hutton* v. *Smith* (175 N. Y. 375) the action
was to declare a trust in certain savings deposits made
in a savings bank by one Rose Ann Coyle in favor of
the plaintiff. The plaintiff was permitted to testify to a
conversation between his uncle and Mrs. Coyle in which
the uncle said: "I will have that money, or I will know
the reason why," to which Mrs. Coyle replied: " I have
it in trust for John, the orphan (meaning plaintiff), and
you can't get it." The question was as to the compe-
tency of this testimony. Chief Judge PARKER reviews
the previous cases in this court on the much-debated
question before us and held that the testimony was erro-
neously admitted, but that the admission was not harm-
ful. The plaintiff was further permitted to testify to
conversations between Mrs. Coyle and the officers of the
bank. It may be inferred from the discussion of the com-
petency of this evidence that the learned chief judge did
not consider its admission to be a violation of the statutory
inhibition, but it was not so decided, the court saying
that if the admission of the testimony was error it was
not harmful, and it further stated that the transaction
was in no way helpful to the plaintiff in establishing the
existence of the trust and his right to enforce it. In *Bur-
dick* v. *Burdick* (180 N. Y. 261, 264) it was said: " The
witness being a party to the action was incompetent to
testify to such transactions under section 829 of the
Code, and it is settled by authority that such a disqualifi-

cation includes conversations or transactions between the deceased and third parties, at which the witness was present, even though she did not take part therein. (*Holcomb v. Holcomb*, 51 N. Y. 316; *Matter of Eysaman*, 113 N. Y. 62; *Matter of Dunham*, 121 N. Y. 575; *Matter of Bernsee*, 141 N. Y. 389.)" The decision in that case, however, is not controlling because the testimony which was excluded embraced a personal transaction between the witness and the deceased. The case, if material at all, is only to show the belief of the judge writing the opinion that the construction of section 829 had been settled by the later authorities to the effect he stated. In *Lawyer v. White* (198 N. Y. 318) the action was in ejectment to recover possession of a farm. The controversy turned on an alleged destroyed or lost deed and the plaintiff was permitted to prove conversations between herself and the defendant, her mother, relating to the deed. It was contended for the appellant that this testimony involved a personal transaction with the deceased from whom the plaintiff claimed the deed. Plainly, it did not. It went simply to prove the defendant's admissions and those admissions were competent evidence against the party making them whether they related to the acts of a deceased or any other person. So the court held. But the relevancy of the case lies in what was written by Judge GRAY in the opinion then delivered: "It was, finally, held that they (transactions between the witnesses and deceased person) might not be testified to by such witness, if he participated in the transaction, or conversation, or was in any way a party to it, by reference, or otherwise. In *Hutton v. Smith*, (175 N. Y. 375), that question was considered and the cases reviewed. But the present case involves no such close question. The purpose of this provision of the Code is to prevent undue advantage and that purpose is to be borne in mind when questions arise. (*Wadsworth v. Heermans*, 85 N. Y. 639.) If we are to give to the language ' concerning a personal transaction '

so broad a signification, as to exclude the evidence of facts
not constituting the transaction and not proving any com-
munications between the parties, and which had nothing to
do with their negotiations, we should be using the Code
provision as an instrument to work inequality and, there-
fore, injustice." (p. 323.) I think I have now referred
to all the cases in this court dealing with the question
before us, and the review seems sufficient to bear out the
statement made at the inception of this discussion that
the cases are in irreconcilable conflict.

An attempt was made by Justice CELORA E. MARTIN,
of the Supreme Court, afterwards a judge of this court,
to frame some rule which would harmonize the authorities.
That effort is to be found in the opinion in *Eighmie* v. *Tay-
lor* (68 Hun, 573). All the cases which had been decided
up to that time (which was before the decisions in 140th and
141st N. Y.) are collated and reviewed with the thorough-
ness and acumen which marked the work of that learned
judge. He harmonized the authorities on the theory
that there were two different rules, one, that of the *Hol-
comb, Eysaman* and *Dunham* cases, which applied in
cases where a will or other instrument was contested on
the ground of undue influence, restraint, mental inca-
pacity or fraud, and another rule applicable to other
cases. The objection to this view lies in the fact that the
statute lays down but a single rule applicable to all cases
alike; that in none of the conflicting decisions of this
court has any distinction been drawn on account of the
character of the litigation in which the question arose;
and it is difficult to suggest any tenable ground on which
such a distinction could be founded. The learned judge
did not attempt to suggest any reason for the distinction.
He felt his duty was to find some rule, if possible, by
which the authorities could be reconciled.

A further ground is urged that a distinction can be
drawn between two cases, one where the witness is inter-
ested at the time of the transaction or conversation to

which he testifies, and the other where the interest is acquired subsequently. The answer to this position is two-fold. The statute draws no such distinction, but makes the disqualification dependent upon the interest the witness has at the time of testifying, either in the litigation or in its subject-matter. Next, the exact point has been determined by this court to the contrary. (*Miller* v. *Montgomery,* 78 N. Y. 282.) It is further to be observed that the witness in this case had at least as great an interest as the witness in the *Holcomb* case. In the latter case the only interest of the witness was that which he might acquire as one of the next of kin of the deceased on the latter's death intestate without having made any further disposition of the bond and mortgage in suit. The interest of the witness in this case was the title he would acquire as surviving husband in case of the death of his wife intestate without having parted with the property.

It seems to me that we have arrived at a point in this war of conflicting decisions at which the controversy should be settled both in the interest of litigants and of the administration of justice by laying down some rule by which the courts can be guided. I think we can consistently and logically enunciate but one of two rules — that of the earlier cases based on what is claimed to be a strict construction of the words of the statute, that a witness is disqualified from testifying only in a transaction or conversation in which he takes actual part, or the other rule, that whatever he derives from the personal presence of the deceased by the use of his senses is a communication from the deceased to him within the meaning of the statute. The suggestion that if the witness is referred to in the communication it is a communication to him, but otherwise not, seems to me untenable. If a witness eavesdropping at a key hole overhears a conversation between the deceased and a third party, how can the question whether that conversation is a communication to

the witness be dependent upon the fact that the deceased or the other party refers to the eavesdropper, though ignorant of his presence? The distinction is repudiated in several of the later decisions of this court. I have already quoted from Chief Judge ANDREWS in the *Bernsee* case that such a distinction "would furnish an easy and convenient method in every case of evading the statute," and from Judge GRAY in the *Dunham* case that communications in the presence of the witness were inadmissible. As between the two constructions of the statute to which, in my judgment, we are limited, I think we should adopt that which excludes the testimony of an interested witness to any knowledge which he has gained by the use of his senses from the personal presence of the deceased. This construction is the one more consistent with the later decisions of this court. Indeed, a very learned judge thought that the law had become "well settled" by the decision in the *Bernsee Case* (*supra*). (See opinion of BRADLEY, J., *Ditmars* v. *Sackett*, 92 Hun, 381.) I think also it better carries out the object intended to be effected by the legislature. When the common-law rule which disqualified all interested witnesses from testifying was abolished, this exception to the general abrogation of the rule was enacted. The underlying reason of the exception is plain. While it was deemed wise to receive the testimony of witnesses, however biased by interest in the litigation, leaving their credibility to be determined by the court or jury, it was deemed unwise to allow an interested party to give testimony against the successor in interest of a deceased person relating to matters which the death of the deceased had placed it beyond the power of the adverse party to contradict. In other words, the object was to retain the equality between the parties which otherwise, under the new rule, would have been destroyed by the death of the deceased. In *Wadsworth* v. *Heermans* (85 N. Y. 639, 641) Judge FINCH said: "The spirit and purpose of this

provision of the Code (Section 829) is equality, to prevent undue advantage; and that purpose should be kept in view when border questions and lines of distinction are to be drawn." In *Will of Dunham (supra)* Judge GRAY expresses the same view: "While the ruling may be said to be stretched to the extremest tension, it has the merit, possibly, of being in furtherance of justice. The evidence is intended to work here against the respondent, who derives her interest under the testator's codicil, and whose lips are sealed by the law as to the matters; and to permit a witness, so much interested as this one was, in the amount of the estate ultimately distributable, to testify to things said and done by the testator, though with others, but while he was present, with the only supposable purpose of affecting the interests of the respondent, would certainly seem to be giving an undue advantage to the one as against the other." (p. 577.) Referring to the contention that the section should be construed literally, Judge ANDREWS said in *Clift* v. *Moses* (112 N. Y. 426, 435): "But this literal construction of the section has not been adopted by the courts. It has been held with general uniformity that the section prohibits not only direct testimony of the survivor that a personal transaction did or did not take place, and what did or did not occur between the parties, but also every attempt by indirection to prove the same thing, as by negativing the doing of a particular thing by any other person than the deceased, or by disconnecting a particular fact from its surroundings and permitting the survivor to testify to what on its face may seem an independent fact, when in truth it had its origin in or directly resulted from a personal transaction." This was cited with approval by Chief Judge PARKER in *Richardson* v. *Emmett* (170 N. Y. 412).

I appreciate that, on the other hand, many persons advocate the admission of interested witnesses to testify to all matters, whether with a deceased person or with others, leaving the credibility of the witnesses to be deter-

mined by the court or jury. Whatever may be said of this view it certainly is not the view which has been taken by the legislature, and of all rules a rule that permits an interested witness to testify to an act or statement by the deceased on which his rights depend, if he takes no part in either, but excludes him if he does, would seem about the worst. It is most easily evaded by the dishonest witness, while often fatal to the conscientious. Nor is the broad exclusion declared in the later cases of this court clearly an enlargement of the statute. Communication is not necessarily confined to conversations. Anything imparted by one to another is communicated by him, even disease. A personal communication, within the meaning of the section, was well defined by the Supreme Court in *Price* v. *Price* (33 Hun, 69, 73), as "any one which the surviving party claims to have received directly or indirectly from the deceased person, and which the deceased person if living could contradict or explain. Nor, in our judgment, is the mode of making the communication by the deceased to the survivor at all controlling." As section 399 of the old Code read before the amendment of 1862 (Chap. 460), it inhibited the witness from testifying to "Any transactions had personally between the deceased person and the witness." By that amendment it was extended to "any transaction or communication." Paraphrased in section 829 of the present Code it reads, any "personal transaction or communication between the witness and the deceased person or lunatic." "Transaction," as the provision stood originally, would have included a conversation, and the addition of the term "communication" must have been intended to extend the scope of the provision.

Under the views here expressed the admission of the testimony of the witness Hart relative to the alleged gift by the plaintiffs' intestate to the witness' deceased wife was an error, and for that reason the judgment was properly reversed.

The order of the Appellate Division should be affirmed and judgment absolute given against the appellant on the stipulation, with costs in all courts.

GRAY, HAIGHT, VANN, WERNER, HISCOCK and COLLIN, JJ., concur.

Order affirmed, etc.