GEORGE E. McCARTHY, as Administrator, etc., of EMMETT G. McCARTHY, Deceased, Appellant, v. WILLIAM F. WOOLSTON, SR., and Another, Respondents.

Fourth Department, July 1, 1924.

Witnesses — competency — action to recover for death of plaintiff's intestate who was killed in automobile accident — intestate was riding by invitation with one of defendants — witnesses — driver of automobile is competent to testify as to circumstances attending accident — said testimony is not in violation of Civil Practice Act, § 347.

In an action to recover for the death of plaintiff's intestate who was killed in an automobile accident in which it appeared that the automobile was being driven by one of the defendants, and that plaintiff's intestate was riding in the automobile by invitation of the driver, the driver is competent to testify under section 347 of the Civil Practice Act as to the circumstances attending the accident, so far as they do not involve any personal transaction or conversation with the intestate.

APPEAL by the plaintiff, George E. McCarthy, as administrator, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Monroe on the 16th day of April, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying the plaintiff's motion for a new trial made upon the minutes.

O'Brien & McSweeney [Smith O'Brien of counsel], for the appellant.

Hubbell, Taylor, Goodwin & Moser [Clarence P. Moser and Raymond Bentley of counsel], for the respondents.

DAVIS, J.:

On August 2, 1921, Emmett G. McCarthy at the invitation of William F. Woolston, Jr., became a passenger in a Ford automobile owned by defendants. Two other persons were in the automobile. While driving along the highway an accident occurred in which McCarthy was killed. In this action to recover damages for causing his death, it was the theory of plaintiff on the trial that the accident was caused by the negligence of the defendant Woolston, Jr., who was driving the car. The theory of the defendant was that the accident occurred because of the negligence of the driver of another car coming in the opposite direction, whereby the Ford was crowded off the highway to the right. Because of a culvert ahead it was necessary for the driver to make a sharp turn to the left, and the right front wheel was broken so that he lost control of the car and it crossed the highway into the ditch, where McCarthy was thrown out and killed.

The evidence on this issue was conflicting and a fair question of fact was presented, which the jury has decided in defendant's favor. We cannot say that the verdict was against the weight of evidence, and we might affirm without opinion except for a somewhat novel question urged by appellant's counsel with great force and resourcefulness as ground for reversal. This question deals with the testimony given on the trial by Woolston, Jr., who, over objection and exception, related as a witness in behalf of himself and his father, the details and circumstances of the accident.

This evidence was given for the purpose of showing freedom from negligence on his part. Plaintiff's counsel objected to its admission on the ground that the witness was incompetent to testify under the provisions of section 347 of the Civil Practice Act.

The general rule in many jurisdictions is that statutes prohibiting a party interested in the event from testifying in his own behalf or interest against the executor, administrator or survivor of a deceased person, concerning a personal transaction or communication between the witness and the deceased person, do not apply in actions for causing the death of a decedent. (See 40 Cyc. 2269. But see L. R. A. 1916D, 810, 811, notes.) A contrary rule has been applied in this State where the death was caused as a direct act or transaction between the person charged with responsibility therefor and the deceased person. In an action brought to recover for the death of a boy alleged to have been killed as a result of an assault made upon him by the defendant, this court held that the defendant was incompetent to testify concerning his conversations with the boy at the time of the alleged assault, or to deny that he kicked him. (*Abelein* v. *Porter*, 45 App. Div. 307. See, also, *Foster* v. *Shepherd*, 258 Ill. 164.)

More recently, following the rule in the *Abelein* case, it has been held at Trial Term, on a motion for a new trial, that in an action against a dentist for malpractice for causing a tooth being extracted to drop into the patient's windpipe, from the effects of which she subsequently died, that defendant could not, unless the door was opened for him, testify as to his acts and conversations at the time, on the ground that they constituted a personal transaction and communication between him and the deceased person. (*Minns* v. *Crossman*, 118 Misc. Rep. 70; affd., 205 App. Div. 846.)

Assuming this to be the correct rule, we think there was no violation thereof in this case constituting error. The fact that decedent was invited to be the guest of Woolston, Jr., would be a personal transaction, but that fact had already been established by another witness as a necessary part of the plaintiff's case. Testi-

mony by Woolston, Jr., of the previous occasions that decedent had been an invited guest in the car would probably fall into the class of personal communications and transactions prohibited by the statute. But the slight proof given on that subject was preliminary evidence only, immaterial in character, and its admission was not harmful error.

The evidence forming the basis of appellant's contention here is presented in this form in the record: "Q. Now, as you approached the scene of the accident, approached the place where the accident occurred, what if anything did you meet on the road? A. We met an automobile. Mr. O'Brien: I think I want one objection, perhaps, on the record, and then I won't have to object afterwards. I object to that on the ground that the witness is incompetent to testify under section 347 of the Civil Practice Act, for the reason that he is a party in interest and cannot testify to any transaction between himself and the deceased, and that the evidence is incompetent and immaterial. The Court: I will admit the evidence as to the operation of the car. I don't think it involves a personal transaction or communication. Mr. O'Brien: Exception. * * * Q. As you saw that car approaching what did you do in connection with the operation of your car? Mr. O'Brien. Same objection as previously taken. [Overruled. Exception.] A. Why, I started to turn out. Q. Turn out which way? A. Turn out to the right. Q. To your right? A. Yes. Q. As you did so what did the driver of the other car do, if anything, what did you see him do? Mr. O'Brien: To that I object on the same grounds as before. [Same ruling and exception.] A. Why, he turned around to his left in his seat. * * * Q. Can you tell about how far you were from this little bridge over the ditch when you turned out to avoid hitting it? Mr. O'Brien: May it be understood this is all over my objection, if the Court please? The Court: Yes, all the evidence thus far given. * * * A. I was right nearly to the bridge."

We do not regard these questions and answers as dealing with a personal transaction or communication with decedent. They are the history of an event in which the decedent with others was involved, but not one personal between him and the witness. It was partly, also, a description of what the driver of the other car was doing, and in part a description of the place where the accident occurred and of the indvidual acts of the defendant in driving his car and in seeking to avert an accident. The defendant was competent to testify to any relevant matter not being a transaction with the decedent personally. (*Card* **v.** *Card,* 39 N. Y. 317.)

There is a general definition of transactions and communications often repeated in adjudicated cases, to the effect that they embrace every variety of affairs which can form the subject of negotiations, interviews or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition or language of another. (*Holcomb* v. *Holcomb*, 95 N. Y. 316, 325; *Heyne* v. *Doerfler*, 124 id. 505.) The statute not only prohibits direct testimony of a survivor that a personal transaction did or did not take place, but it also prohibits his testifying to what on its face may seem an independent fact when it appears by other evidence that it had its origin in or directly resulted from a personal transaction. (*Clift* v. *Moses*, 112 N. Y. 426.)

The cases cited and relied on dealt largely with obligations arising on contract between the witness and decedent, where negotiations, communications and transactions between the parties were the necessary basis of liability. There must be a distinction, we think, between such cases and cases where the transactions were those in which both parties were independent participants, but the transaction did not occur between the two.

The acts of Woolston, Jr., would naturally have been the same had McCarthy not been present. They did not arise primarily in any transaction or communication between them. If McCarthy, sitting on the rear seat, had said anything to the witness in the matter of giving warning or directions as to the operation of the car, he would have been prohibited from testifying on that subject. (*Griswold* v. *Hart*, 205 N. Y. 384.) Very likely, too, his testimony as to where McCarthy was seated in the car, or what the latter did after being invited to ride, would have been incompetent. But as to the acts of the other driver and his own in the emergency confronting him, and the physical conditions present, we think he was competent to testify.

As was said by Judge GRAY in *Lawyer* v. *White* (198 N. Y. 318, 323): " The purpose of this provision of the Code* is to prevent undue advantage and that purpose is to be borne in mind when questions arise. * * * If we are to give to the language ' concerning a personal transaction ' so, broad a signification, as to exclude the evidence of facts not constituting the transaction and not proving any communications between the parties, and which had nothing to do with their negotiations, we should be using the Code provision as an instrument to work inequality and, therefore, injustice."

---

* See Code Civ. Proc. § 829; now Civ. Prac. Act, § 347.— [REP.

Furthermore, it is common knowledge that in the trial of such causes in our courts, it has been the practice long acquiesced in by bench and bar, that defendants may be called as witnesses to give their version of the proximate cause of the accident. Where a statute for a long period of time has been given a practical interpretation in court procedure, or by the acts of public officers, courts will be reluctant to make any revolutionary change in the interpretation to be given such statute, and will do so only when the reason and necessity therefor are clear and compelling. (*Lowman* v. *Billington,* 65 Misc. Rep. 111, 117; *People* v. *Quigg,* 59 N. Y. 83, 86; *People ex rel. Werner* v. *Prendergast,* 206 id. 405, 411; *Troup* v. *Haight,* 1 Hopk. Ch. 239, 268.)

The judgment and order should be affirmed, with costs.

All concur; HUBBS, P. J., not sitting.

Judgment and order affirmed, with costs.