Antonio A. Brimo, Plaintiff, *v.* Theodore Revillon and Others, Doing Business under the Firm Name of Harvey Fisk & Sons, Defendants.

Supreme Court, New York County, February 3, 1931.

*Newton W. Gilbert [Cyrus B. Austin* of counsel], for the plaintiff.

*Barber, Fackenthal & Giddings [Alfonse F. Spiegel* of counsel], for the defendants.

WALSH, J. This is an action for an accounting. Defendants were copartners transacting business as stockbrokers. Plaintiff was their customer having a margin account with them. His right to an accounting is based upon the defendants' alleged illegal sales of certain of the securities in plaintiff's account. The account was opened on July 10, 1929. At that time plaintiff agreed to maintain at all times a thirty per cent margin. He also signed the usual so-called " consent card," pursuant to which the defendants were authorized, in case his indebtedness to them should not at any time be secured to their satisfaction, to sell without notice at any exchange at public or private sale any or all securities in his account. He also delivered to them a writing in which he appointed one of his employees, Tiedeman, as his agent to receive notices and margin calls in his behalf. Plaintiff's account became quite active. Toward the end of October, 1929, plaintiff carried with defendants over 10,000 shares of stock on margin. For several days prior to Saturday, October twenty-sixth, his account was undermargined and calls for more margin were sent to him. On that day he called at defendants' office. He stated it was difficult for him to raise more money, whereupon it was agreed that certain of his stocks be sold which was done. Later in said day defendants wrote plaintiff that they had underestimated his margin requirements and notified him it would be necessary for him to sell fifty per cent of the securities in his account. It further requested him to place orders to have same sold at the market, the letter continuing: " You are to consider this an official notice that unless we receive such selling orders it will be necessary for us to proceed to enter such selling orders at the market in order to place your account in proper condition." Plaintiff, in response to this letter, called at defendants' office before the opening of the market on Monday, October twenty-eighth. He then saw Mr. Rath, the defendants' customers' man, who had charge of his account. He told Mr. Rath he did not want to sell any more stocks and asked how much additional margin would be required. He was told $30,000 to $35,000. He then asked that he be given until the following Wednesday or Thursday to put up this additional margin, stating that he expected to be able to procure the same from his Manilla office by then. Mr. Rath took plaintiff to the office occupied by Mr. Revillon and Mr. Collingwood, two members of defendants' firm. Plaintiff was there told that Mr. Collingwood

was the member of the firm in charge of margin accounts and was the only person who had authority to pass upon plaintiff's request.

Up to this point there is no dispute as to the transactions between the parties in October. An interview was then had at which plaintiff, Mr. Rath, Mr. Revillon and Mr. Collingwood were present. Plaintiff's request was communicated to Mr. Collingwood by either Mr. Rath or Mr. Revillon, plaintiff stating he took no part in the conversation. At its conclusion plaintiff testifies Mr. Collingwood stated to him, patting him on the back, that they would give him the extension requested. That Mr. Collingwood said: "All right, Mr. Brimo, we are going to await your check; we won't sell any shares if you don't want to sell." Defendants admit that this interview took place, but their version of it differs from that of plaintiff in that both Mr. Revillon and Mr. Rath stated that Mr. Collingwood said that he would give plaintiff until Wednesday or Thursday to secure the money upon condition that the market stayed the same as it was on Saturday or bettered itself, but that in case of a further break in the market more securities would have to be sold. The market broke further on Monday and again on Tuesday. Defendants called plaintiff's office by telephone on both these days and told Mr. Tiedeman, his agent, who answered the call, that they wanted to sell more of plaintiff's securities. He refused to give them any instructions, stating that under their agreement they were not to sell until Thursday, whereupon he hung up the receiver. The testimony established that Mr. Brimo was in the office at the time of these calls and was informed of them by Mr. Tiedeman. It is not charged that the sales were not made as claimed.

The basis of plaintiff's claim is that defendants, under their agreement with him, were bound to wait until Thursday before selling, or, in the event of their revocation thereof, to give him reasonable notice of such retraction and of the time and place of the sales. On Monday morning, October twenty-eighth, defendants clearly had the right, in the event the plaintiff did not furnish additional margin or give selling orders as requested in their letter of October twenty-sixth, to sell such securities as they deemed necessary for their protection. Not only was this right vested in them by the provisions of the "consent card," but also by reason of the fact that they had given him reasonable notice. The market at that time was in a somewhat chaotic condition. It had been falling rapidly. Both plaintiff and defendants knew this. Nevertheless, if plaintiff's story is to be believed, the defendants, knowing of these conditions and plaintiff's impaired margin, and also being aware of the fact that he had admitted to them that he had no money or securities available to improve his margin condition,

committed themselves to the extent of relieving him from the necessity of further protecting his account until the following Thursday. Plaintiff was a new customer. So far as the record shows, defendants knew nothing of his financial responsibility. The only knowledge they had of his ability to procure the additional sums by Thursday was his statement that he expected to do so. In view of the absolute denial by the witnesses Rath and Revillon· that such extension was given by Mr. Collingwood, and considering all the circumstances, it seems improbable that the agreement was as stated by plaintiff. I, therefore, find as a fact that the agreement made was as testified to by defendants' witnesses. Under this agreement there was no waiver by the defendants of the right to sell which was theirs on Monday morning. It was not, as plaintiff contends, " a reservation by the defendants of the right to demand additional margin in case the market dropped," but the retention of their right to sell at any time that the market dropped. They agreed to defer the liquidation of plaintiff's account until such time as the account became impaired by the fall in the market price of the securities therein.

The rule laid down in *Rosenthal* v. *Brown* (247 N. Y. 479) is not here applicable. In that case there was a definite extension of time. Plaintiff had been led to believe that he had nothing to fear if he put up the required margin before the time fixed. Defendants, notwithstanding their agreement and before the expiration of the extension given, closed his account. In other words, defendants recalled their waiver without notice to plaintiff and without affording him a reasonable opportunity to protect himself. Here there was no retraction. The extension was contingent upon market conditions. When the market broke, the indulgence given expired. It is the same as though in the *Rosenthal* case the defendants had not sold until the expiration of the additional time given to put up additional margin, in which event, of course, no additional notice would have been required. Here, however, though not necessary, the defendants, after the market broke, gave plaintiff notice. They telephoned his office, advising him of the break and requesting selling orders. Plaintiff refused to discuss the matter with defendants, but hung up the telephone, insisting that they had no right to sell until Thursday. Under these circumstances it was unnecessary for them to delay further in selling the securities they did.

Plaintiff's case rests upon the alleged agreement made by him with the defendant Collingwood on October twenty-eighth. Mr. Collingwood died before the trial. Defendants duly objected to the competency of the testimony of plaintiff with respect to the

conversation had with Mr. Collingwood on the ground that they as " surviving " partners were entitled to the protection of section 347 of the Civil Practice Act. The testimony was received, the court reserving decision with respect to its admissibility. The surviving defendants here are the " survivors " of the deceased partner within the meaning of the section. (*Clift* v. *Moses*, 112 N. Y. 426; *Levy* v. *Louvre Realty Company*, 222 id. 14, 19.) Nor does the fact that the conversation was had in the presence of a surviving partner make it admissible. (*Herschman* v. *Fischer*, 206 App. Div. 629.) Even though the plaintiff himself did not participate in the conversation, the same was in his interest and the statements attributed to the deceased upon which plaintiff relies as a basis of his claim were concededly made by the deceased directly to him. Hence, it is inadmissible. (*Griswold* v. *Hart*, 205 N. Y. 384, 390.) The evidence was improperly received and should have been stricken out. So, also, should the evidence adduced by defendants in rebuttal of such testimony, the defendants in offering same having expressly reserved their rights under section 347.

Plaintiff claims that, even though conceding, without admitting, that his conversation with Mr. Collingwood was inadmissible, the defendants by proceeding to introduce evidence in their own behalf after the denial of their motion to dismiss at the end of plaintiff's case waived all exceptions to the refusal to nonsuit, and assumed the risk that any deficiency in plaintiff's case might be supplied by the evidence introduced by them. It is unnecessary to discuss the question of whether the rule is here applicable, for, even though consideration be given to all such evidence, there was no proof in defendants' case which in any wise supplied any such deficiency.

Judgment for defendants. Submit decision on notice.