OPINION OF THE COURT
Edward M. Horey, J.
In the instant case an attorney was hired for the limited purpose of drawing a deed for the conveyance of a parcel of real property.
*995 To assist the attorney with his assigned task the seller furnished the attorney with a hand-drafted sketch of the acreage to be conveyed. On that sketch the eastern boundary of the parcel was shown to be parallel to the west line of the parcel. The east line was also shown as being parallel to a town highway known as Hoxie Road.
The difficulty which has ensued stems from the fact that Hoxie Road runs generally northeasterly and southwesterly and not in a north and south direction as does the west boundary of the parcel. The attorney testified that he consulted a county map and observed that Hoxie Road did not run in a north and south direction. Nonetheless the attorney mistakenly prepared the deed with the eastern line of the parcel running in a north-south direction parallel with the west line of the premises. The attorney concedes his error.
Upon trial of the issues the plaintiff sought to offer proof of the intention of the seller as to the land to be conveyed. Proof was offered that the wife of the seller, to wit, one Iona Benson, had witnessed her husband taking measurements along the existing natural boundaries in the preparation of the sketch which he furnished for the sale to the defendants, Clabeau. Later, as a surviving tenant by the entirety, Mrs. Benson executed a deed of adjacent premises to the plaintiffs, Hadley. Appropriate and timely objections that the testimony of Mrs. Benson violated the provisions of the Dead Man’s Statute (CPLR 4519) were made by the attorney for the defendant. Decision on the objections with the concurrent motion to strike was reserved by the court. The court considers this rule of evidence concerning which debate over its worth and efficacy continues unabated.
Briefs upon the evidentiary point have been submitted. Plaintiff relies heavily upon the case of Matter of Potter (24 AD2d 812, 813 [3d Dept 1965]) wherein that court stated: "We agree with the proponent that she and another witness should have been allowed to testify to transactions and conversations with the decedent which they observed but in which they did not participate.”
On the basis of this decision, plaintiff urges that information gleaned from an "observation” does not fall within the parameters of a "transaction” or a "communication” which are precluded under CPLR 4519.
What constitutes a "transaction” or "communication” under the provisions of the Dead Man’s Statute (CPLR 4519) was set *996 forth in detail in the time-honored and continuously quoted case of Holcomb v Holcomb (95 NY 316, 325 [1884]). There the court stated: "Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews, or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition, or language of another. The statute is a beneficial one and ought not to be limited or narrowed by construction. Although it must appear that the interview or transaction sought to be excluded was a personal one, it need not have been private or confined to the witness and deceased. If they participated, it does not change its character because others were present.” (Emphasis added.)
If as stated by the Court of Appeals in Holcomb v Holcomb (supra) a communication includes every method by which one person can derive impressions or information from the conduct of another, it follows, as night the day, that the information gleaned by Iona Benson from observing her husband walking the fence and tree lines in preparing the sketch was a communication and the witness is incompetent to testify thereto.
This court does not share the opinion that the construction to be given to the Dead Man’s Statute is dependent upon the personal views of the particular presiding Judge or determining court as to strictness and leniency of construction. In Matter of Kelly (238 NY 71 [1924]) Judge Crane writing for the Court of Appeals made an extensive review of the matters of judicial construction of the Dead Man’s Statute. He stated:
"In Griswold v. Hart (205 N. Y. 384) Chief Judge Cullen reviewed * * * the earlier authorities in this state upon this question and determined that since the Holcomb Case (95 N. Y. 316) a much stricter view had been taken regarding the exclusion of the testimony of interested parties than theretofore. While it has been the early rule that a party in interest could testify to conversations between the deceased and a third party which he had overheard and in which he had taken no part, since the Holcomb case, this was no longer the rule and any information received from the deceased or through the deceased from a transaction of any nature could not be testified to by a party in interest. * * *
"Further, he [Judge Cullen] said: 'A personal communication, within the meaning of the section, was well defined by the Supreme Court in Price v. Price (33 Hun, 69, 73), as "any *997 one which the surviving party claims to have received directly or indirectly from the deceased person, and which the deceased person if living could contradict or explain. Nor, in our judgment, is the mode of making the communication by the deceased to survivor at all controlling. ” ’ ” (Supra, at 80-81; emphasis added.)
It is well noted that the history and defined proper construction to be given to the Dead Man’s Statute in Matter of Kelly (supra) was concurred in by Chief Judge Hiscock and Judges Cardozo and Pound, giants in the formulation and construction of the laws of this State.
This court concedes that Matter of Potter (24 AD2d 812 [1965], supra) does as the plaintiff urges make an exception to the statute when the information received was an observation in which the witness did not participate, thus making a distinction in the mode of making the communication by the deceased to the survivor.
Although readily comprehended, the Dead Man’s Statute is perhaps the most difficult of all evidentiary rules to apply. That together with the fact that on occasion its rigid application can work injustice and thus beg for leniency or distinction in application has lead to innumerable contradictory decisions both at the trial and appellate court levels. This court does not seek to explain the decision in Matter of Potter (supra) nor attempt to distinguish it. That should be for the court which made the decision.
It is noted, however, that no authority was cited in Matter of Potter (supra) for the proposition that information gleaned by observation was not a communication.
It is submitted that if the evidence in that case were tested under the rules of construction of Holcomb v Holcomb (95 NY 316, supra) and Griswold v Hart (205 NY 384, supra) and Price v Price (33 Hun 69) all as construed in Matter of Kelly (238 NY 71, supra) a different result would have obtained. Until those decisions are reversed or modified, this court proposes to follow them as decisional law binding on this court. Accordingly, the objections of the defendant to the evidence of Iona Benson as violative of CPLR 4519 are sustained and such evidence is stricken.
The two additional cases decided by the Appellate Division, Fourth Department, and urged by the plaintiff as supportive of the receipt of the testimony of Iona Benson under CPLR 4519 are inapplicable and readily distinguished.
*998 Rost v Kessler (267 App Div 686 [4th Dept 1944, Per Curiam]) was decided on the basis of a 1940 amendment to the Civil Practice Act. Laws of 1940 (ch 620) added to section 347 of the Civil Practice Act a paragraph which provided: "Nothing contained in this section, however, shall render a person incompetent to testify as to the facts of an accident or the results therefrom where the proceeding, hearing, defense or cause of action involves a claim of negligence or contributory negligence in an action wherein one or more parties is the representative of a deceased or incompetent person based upon, or by reason of, the operation or ownership of a motor vehicle being operated upon the highways of the state, but this provision shall not be construed as permitting testimony as to conversations with the deceased.”
Since section 347 of the Civil Practice Act was included without change into the Civil Practice Laws and Rules as CPLR 4519 the cited provision continues as an express statutory exception to the receipt of evidence otherwise precluded.
The case of McCarthy v Woolston (210 App Div 152 [4th Dept 1924]) is similarly inapplicable. The decision on the receipt of evidence in that case was made on the determination that the proffered evidence did not involve a personal transaction with the decedent. The court carefully pointed out that the communications offered in evidence were "the history of an event in which the decedent with others was involved, but not one personal between him and the witness.” (Supra, at 154.) The requirement that the transaction or communication be a personal one to be barred under the statute is provided in the very language of the statute itself. The statute bars only testimony "concerning a personal transaction or communication”. (See, first unnum para of CPLR 4519.) The requirement that a transaction or communication be a personal one to be barred by the statute is well recognized. (See, 25 CarmodyWait 2d, NY Prac § 149:229, at 279.)
Turning now to the evidence which remains in the case, a visual on-the-ground inspection conducted by the court confirms what is indicated by the maps placed in evidence. It discloses the consequences which would result from giving effect to the description as the attorney prepared it. The parcel would be canted, bearing no relationship to existing boundary lines established by wood lots, fence lines and roadways. A small irregular triangular-shaped parcel of land adjoining Hoxie Road would be left east of the premises. Such parcel would be too small for use as building lots and too *999 small for tollage or pasture. In addition, rigid adherence to the description used by the attorney would create two narrow parcels of land lying south of a lengthy new fence which runs generally in an east-west direction. The consequence would be that this fence installed at a cost of $5,000 would serve no utilitarian purpose. The seller would be required to either stand the cost and expense of moving the fence southerly to the boundary line as drawn by the attorney or alternatively permit his livestock to trespass on the two narrow gores of property which would belong to the purchaser and located south of the fence.
Further, the initial agreement of sale described the acreage in issue as "25 acres more or less.” In preparing the deed the attorney noted that under the description which he used the acreage would be more than 25 acres. He estimated that it would contain an additional seven acres. Communicating that fact to the seller and buyer, they made an arbitrary adjustment of purchase price by increasing the same $400. Under the description which was prepared by the attorney the actual acreage included in the parcel is 43.6 acres. If the natural boundaries were used in the deed description, a much smaller acreage would be included more consistent with the acreage contemplated by the parties.
The unusual feature which attends the case at bar is that the attorney who drew the deed in issue represented both the buyer and seller in the sale transaction. This Judge has previously noted the delay, embarrassment and legal complexities which can ensue when an attorney undertakes the dual representation of a purchaser and a seller in a real property transaction. In Matter of Gebauer (79 Misc 2d 715, 731, affd 51 AD2d 643) it was stated that: "if either party were aware of the hazards and perils of such representation they would never permit it. The court is equally satisfied that if the attorney gave realistic consideration to the same hazards and perils he would never undertake such dual representation. In the instance of dispute, the invariable consequence is that the attorney finds himself contesting the biblical prohibition against serving two masters and ends up emulating Pontius Pilate by despairingly trying to wash his hands of the entire affair. The rights of the parties are not served. The Bar is criticized. Legal process is delayed. The attorney is embarrassed. If the foregoing are insufficient deterrents, there is a *1000 more practical consideration — the lawyer is seldom paid by anyone.”
The instant case stands as an exception to only one facet of the typical consequences which were noted. Here the attorney did bill both parties for his services and was paid by both seller and purchaser.
This court makes the express finding that the attorney was the agent for both buyer and seller and acted as such for both parties in the preparation of the deed in issue.
While concededly this court has found no decisional law in the State of New York on the issue of whether a mistake caused by an attorney representing both parties to a transaction is a mutual mistake as between the parties, there is ample authority in other jurisdictions. (See, Olcott v South-worth, 115 Vt 421, 63 A2d 189; Hoffman v Chapman, 182 Md 208, 34 A2d 438; Kobylinski v Szeliga, 307 Mich 306, 11 NW2d 899; Schroath v Pioneer Bldg. Assn., 274 Ky 685, 119 SW2d 1113; Steger v Seabaugh, 346 Mo 728, 142 SW2d 1001; see also, 76 CJS, Reformation of Instruments, § 28 [d] [2], at 368-369.) This court holds it to be the law of this State that the mistake of the attorney representing both the seller and purchaser in the transaction in issue was a mutual mistake between the parties.
It is a well-accepted principle of law that an instrument may be reformed for a mutual mistake of fact. (See, Brandwein v Provident Mut. Life Ins. Co., 3 NY2d 491; Abajian v Compagnie Generale De Telegraphie Sans Fil, 23 AD2d 553 [1st Dept 1965], affd 17 NY2d 553; see also, 16 NY Jur 2d, Cancellation, § 43, at 346, and cases cited.)
The general principle of law has been held to be particularly applicable to the reformation of a deed. (See, Paine v Upton, 87 NY 327 [1882].)
The decision of the court is that the deed in issue, viz., deed from John R. Benson to Donald C. Clabeau and Bernice L. Clabeau as tenants by the entirety dated December 21, 1971 and recorded in Cattaraugus County Clerk’s office at liber 725, page 855, should be reformed to describe the property as follows: (description by metes and bounds omitted for publication purposes).
*1001 By such description the natural boundaries of tree lines and fence lines are followed and the eastern boundary is generally parallel to the center line of Hoxie Road. In addition narrow and generally useless parcels of land created under the former description are eliminated.
Judgment is for the plaintiif.