HENRY W. VANWAGENEN, administrator, &c., complainant,

*v.*

ROSE M. L. BONNOT, defendant, respondent, and FREDERICK F. GUILD, substituted administrator, &c., defendant, appellant.

[Submitted December 4th, 1907.   Decided June 15th, 1908.]

The proviso in the Evidence act (*P. L. 1900 p. 363*) that the section permitting parties in civil actions to be sworn as witnesses, &c., "shall not extend to permit testimony to be given by any party to the action as to any transaction with or statement by any testator or intestate represented in said action" renders the surviving party to a transaction consisting of a *donatio causa mortis* incompetent to testify that a closed parcel then delivered, remained in *statu quo*, until after donor's death and as to its contents when opened, because such testimony would establish by necessary inference its contents at the time of delivery, and on that point the deceased, if living, could contradict the survivor.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Emery, whose opinion is reported in *72 N. J. Eq. (2 Buch.) 143.*

*Messrs. Woodruff & Stevens,* for the appellant.

*Messrs. Hood & Hood,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The decree appealed from is based on a bill of interpleader by one VanWagenen, as administrator of John Whitehead, deceased, who was in his lifetime the administrator of Minerva A. Harrison, deceased, and had possession of savings bank books showing deposits in her name in three banks and amounting, without interest credited during this litigation, to over $9,000. These books were claimed in Mr. Whitehead's lifetime by Rose M. L. Bonnot, the present respondent, as having been the subject of a gift *causa mortis* from Miss Harrison to herself; and at the time of Mr. Whitehead's death, in February, 1905, an action of replevin had been brought against him as administrator by Mrs. Bonnot and was then pending. VanWagenen, the complainant below, having been appointed administrator of Whitehead and discovering this situation, filed a bill of interpleader against Mrs. Bonnot, and Mr. Guild, as substituted administrator of Miss Harrison; and having deposited the bank books in court was eliminated from the controversy, which thereupon proceeded as between the parties to this appeal.

The facts and circumstances surrounding and bearing on the last illness and death of Miss Harrison, her relations with Mr. Bonnot and the latter's daughter Ernestine, and the transaction relied on as constituting the *donatio mortis causa* now in question, are so fully and accurately stated in the opinion of the learned and experienced vice-chancellor who heard the cause, that any extended recital of them here, except incidentally, would be needless repetition. We concur with the vice-chancellor in the opinion that savings bank books are proper subjects of gifts *causa mortis*. We also concur in his conclusion that the testimony of Ernestine, the daughter of Mrs. Bonnot, while unsupported by that of any other witness, was of sufficient weight to satisfy a court of the facts as to the delivery by the deceased of the package referred to in her testimony, and as to what was said and done at the time of such delivery in the presence of the deceased. But, as will be seen from an examination of the vice-chancellor's opinion, which fully states the evidence in this particular, assum-

ing the delivery of a package or parcel as satisfactorily proved, the burden still remained on Mrs. Bonnot to show by clear and satisfactory evidence that this package then contained the bank books in question. The package was described as a "long parcel." It was wrapped up, when delivered, in a filthy rag, soiled with sputum, and smelling so foul that it had to be hung outside the window in the open air. It was handed by Miss Harrison to Mrs. Bonnot with the words: "Take them; put them in your satchel; they are yours." The contents of the package were not stated by Miss Harrison or by anyone in her presence. It was not unwrapped at the time of delivery, and as claimed by respondent, not until four days thereafter at her daughter's house. A memorandum for a will had been written, which will be found in full in the vice-chancellor's opinion, and as will be seen, makes no mention of bank books. In short, at the time there was nothing to indicate its contents except that it was a "long" package; that Miss Harrison, at a prior delivery, which was properly held by the vice-chancellor to be ineffective, said to Ernestine, "I want your mother's house (on which there was a mortgage of some $1,500) to be free. I want her to rest;" and to Mrs. Bonnot, "Take this, they are yours. You will find they will be valuable to you;" that at the second and effective delivery she used the words first above quoted, and that she afterward said that Mrs. Bonnot "could rest now."

All this is fully as consistent with the hypothesis that the package contained bonds and mortgages or paper money, or certificates of stock, or railroad or other bonds, as with the bank book hypothesis; in fact, rather more so, as any of the suggested securities when wrapped up would seem more likely to lead a witness to describe the package as "long" than the savings bank books, which would measure about four by six and a half inches.

The testimony of Ernestine about the subsequent opening of the package has no weight in fixing the contents of the package at the time of delivery, if, indeed, at the time of which she testifies, which was the Thursday following the tradition of the package. She was at her sister's in Newark; heard her mother exclaim in another room, went in there and found the dirty rag on her mother's knees and the latter showed her the bank books.

That the bank books had been taken out of the rag is, of course, either hearsay or assumption based on the proximity of the respective articles at the time.

The court below naturally realized the impossibility of sustaining a finding on such evidence that the bank books had been in the package at the time it was delivered, and properly remarked in disposing of the case that the direct proof of that claim rested entirely on the evidence of Mrs. Bonnot herself. She was the first witness called and objection was almost immediately made to her competency to testify as to statements made by or transactions with the deceased, and the court said to her counsel in part:

"The right of this witness to this money will have to be established by evidence other than her own, and it will not be on technical or sharp points. Her own evidence cannot give her the right to this money, and I do not take it you mean to establish your case in that way. You are entitled to have in all evidence that she may properly give, and also all evidence that may be fairly construed not to come within the prohibition of the statute, and I do not mean to close you out from putting in anything which you have got a fair right to argue is proper."

This was equivalent, as we read it, to saying that her testimony, if not clearly incompetent, would be received and final ruling on it reserved until the decision of the case. Accordingly, Mrs. Bonnot went on to testify that from the time she received the package from the hands of Miss Harrison, or at all events from the time she left the sick room with it, the package had remained in her satchel undisturbed in any way until she opened it, and finding the bank books in it gave vent to the exclamation which attracted Ernestine to her side.

If the learned vice-chancellor was right in receiving and weighing this as competent testimony, his decision awarding the bank books to Mrs. Bonnot was probably warranted by the evidence; but our careful and somewhat extended consideration of the case had led us to the conclusion that he erred in so doing.

As we have already seen, there was nothing definitely disclosing the contents of the package at the time of delivery. From that time until the time when Ernestine saw the bank books in her

mother's hands, there is a hiatus.  Manifestly, to show a gift of the bank books it must appear that they were contained in the package at the time of delivery; but there being no direct evidence of this, resort must be had to inference; and from competent proof that there had been no change of any kind in the package during the time in question, and that at the time of opening it, the books were found, the inference would necessarily follow that they were in it at the time of delivery.  Testimony to prove these facts coming from the mouth of anyone but an interested party like Mrs. Bonnot, would have been competent and probably sufficient.  But her testimony, as the court below fully recognized, was incompetent as to any transaction with or statement by Miss Harrison, under the proviso of our statute (*P. L. 1900 p. 363 § 4*), which is all that remains of the old common law rule disqualifying parties generally as witnesses.  The tradition or delivery of the package (claimed to contain the books) was such a transaction; and an essential feature was the presence of the books.  The test laid down in our decisions in ascertaining what is a "transaction with" the deceased about which the other party to it cannot testify is to inquire whether, in case the witness testify falsely, the deceased, if living, could contradict it of his own knowledge.  *Smith* v. *Burnet, 35 N. J. Eq.* (*8 Stew.*) *314, 322; Woolverton* v. *Van Scykel, 57 N. J. Law* (*28 Vr.*) *393; Provost* v. *Robinson, 58 N. J. Law* (*29 Vr.*) *222; Dickerson* v. *Payne, 66 N. J. Law* (*37 Vr.*) *35.*

Manifestly, if the package had been opened at the time of delivery and again wrapped up, Mrs. Bonnot would be incompetent to testify to its contents at that time, because deceased, if living, could contradict her.  Under the circumstances of this case, however, all the direct knowledge was presumably on Miss Harrison's side.  She must have wrapped up the package herself, and, if living, could contradict any testimony tending to show its contents.  And whether such testimony be direct or inferential is of no moment, so long as its logical result is, if admitted and believed, to establish as a fact anything forming part of a transaction with the deceased which said deceased might directly contradict.  And as Miss Harrison could, if living, be heard to contradict any state-

ment that the package contained the bank books, Mrs. Bonnot is as incompetent to connect by her testimony the books displayed to her daughter with the closed package delivered in the sick room as she would have been to say that it had then been opened and the books themselves given to her.

Concluding, therefore, that the court of chancery should not have received or considered the testimony of Mrs. Bonnot on the point in question, and the finding of that court not being sustainable without such testimony, it follows that the decree below will be reversed and the cause remitted with directions that a decree be entered that Frederick F. Guild, as substituted administrator of Miss Harrison, is entitled to the bank books in dispute.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—14.