The complainant seeks to foreclose a mortgage covering property in the town of Irvington, Essex county, New Jersey. The mortgage is dated November 14th, 1907, and was executed by Leon S. Moisseiff, Otto L. Spannhake, Edward Mishkind and Morris Levin to Anna M. Bruen. At the time of its execution, the amount of the mortgage was $15,500. It, subsequently, on May 16th, 1917, was assigned to James de Hart Bruen who held it until his death on June 23d 1932. This suit is brought by his son, as executor of *Page 135 
his last will and testament. Otto L. Spannhake acquired the title; he conveyed it, and his wife, Elizabeth, obtained it; she conveyed it to their son, Walter O. Spannhake, the present owner.
The amount due on the mortgage is $13,975, with interest due thereon from December 15th, 1932. The taxes are in arrears from the year 1932 and amount to approximately $10,000. The property was sold for unpaid taxes for the year 1932.
The mortgage contains a covenant whereby the mortgagee agrees to release any part of the mortgaged premises whenever requested so to do by the mortgagors, their heirs and assigns, upon receipt of a sum of money that bears the same proportion to the sum of $3,000 as the area of the land sought to be released bears to one acre. By virtue of this last mentioned covenant the defendant Otto L. Spannhake, during the lifetime of the said James de Hart Bruen, requested releases of parts of the mortgaged premises for which he offered to pay the proportionate sum fixed by the covenant, but the said decedent either refused to release the requested portion, or he offered reasons for delaying releasing.
The testimony as to the demand, and the tender for the releases, was offered by the defendant through letters which he mailed to the decedent in his lifetime, and the replies of the decedent thereto. This testimony was objected to by counsel for the complainant who asserted that the reception of such evidence was in violation of section 4 of the Evidence act. 2 Comp. Stat.1910 pp. 2216 et seq. The section referred to reads as follows:
"In all civil actions any party thereto may be sworn and examined as witness, notwithstanding any party thereto may sue or be sued in a representative capacity; provided, this section shall not extend to permit testimony to be given by any party to the action as to any transaction with or statement by any testator or intestate represented in said action, unless the representative offers himself as a witness on his own behalf, and testified to any transaction with or statement by his testator or intestate, in which event the other party may be a witness on his own behalf as to all transactions with or statements by such testator or intestate, which are pertinent to the issue." *Page 136 
Counsel for complainant cited several authorities in other states to sustain him, among them being Harte v. Reichenberg
(Neb. Sup. Ct., 1902), 92 N.W. Rep. 987, part of the opinion therein reading as follows:
"The contents of letters and telegrams which pass between parties in the course of a business transaction, not otherwise identified than by a witness, who has a direct and legal interest in the result of the suit, are not competent evidence as against the personal representative of a deceased person. * * * Of course, the sending and receipt of letters or telegrams to and from a decedent are transactions with him."
He also cited McCorkendale v. McCorkendale (Ia. Sup. Ct.,1900), 82 N.W. Rep. 754, in which the court said:
"The witness was a party to the suit, and could not testify as to personal transactions or communications between herself and Neil McCorkendale (deceased). That the letters she claimed to have received from him are within the prohibition of the statute is well settled, and it would seem hardly necessary to cite authorities, so plain is the language of the statute itself, which is broad enough, and must be held to, embrace every communication, whether written or oral, direct or indirect."
He referred to Van Vechten v. Van Vechten (N.Y. Sup. Ct.,1892), 65 Hun. 215; 20 N.Y. Supp. 140, in which it was held:
"In an action to declare a deed made by plaintiff's ancestor a mortgage, it appeared that defendant introduced in evidence various letters written by himself to deceased, touching the matters in issue. Defendant was administrator of deceased, and testified that he found the letters among deceased's papers, and that they were genuine. It is error to admit such letters in evidence."
The principles laid down in these quoted decisions are supported in Smith v. Perry (1897), 52 Neb. 738;73 N.W. Rep. 282; Kroh v. Heins (1896), 48 Neb. 691;67 N.W. Rep. 771; Ramsey v. Ramsey (1932), 174 Ga. 605;163 S.E. Rep. 193.
The complainant further contended that the principal of *Page 137 
the mortgage was in default; that the taxes are unpaid, and, therefore, the defendants are not entitled to the relief they demand in their counter-claim.
Counsel for the defendants urges that the correspondence does not come within the inhibition of section 4 of the Evidence act because the deceased, if living, could not deny, or contradict his own signed communications. To sustain his point he cites the case of Rogers v. McKenna, 96 N.J. Eq. 386, where the suit was instituted to foreclose a mortgage made by the defendant to the complainants executors' decedent. The defense in that case was that payment of the mortgage had been extended for a period of one year after the demand of payment; that no such demand had been made, nor had the period of one year expired. Vice-Chancellor Foster in his opinion said:
"Defendants have offered in evidence two letters, one from Mr. Rogers, under date of May 17th, 1921, in which he called the attention of Mr. McKenna to the fact that the prevailing rate of interest is more than five per cent. — that even the government itself was paying five and one-half — and asks if Mr. McKenna desired the mortgage to continue, and further asks if he would be willing to pay the additional one-half of one per cent. interest. Under date of May 21st, 1921, Mr. McKenna replied to the letter, and stated that he would be willing to make the arrangement suggested. This is the only agreement in legal form that I find before me in any way changing or modifying the terms of the bond and mortgage. There is no other defense interposed. The mortgage is past due. I have overruled the offer of testimony from the defendant Mr. McKenna to show conversations and transactions with the decedent respecting an oral agreement alleged to have been made by Mr. Rogers with Mr. McKenna in April, 1921, in connection with this increase of interest, and which defendants claim will show they were to receive one year's notice or demand for the payment of the amount due on the bond and mortgage. This offer is overruled because it is in violation of the provisions of section 4 of the Evidence act (2 Comp. Stat. 1910 p. 2218), and further because the parties *Page 138 
by their correspondence in May, 1921, definitely reduced to writing whatever negotiations they orally had in the preceding April, if they had any."
The vice-chancellor admitted the letters which passed between the decedent and the defendant; and it is observed that his decision, in part, is predicated upon the contents of those letters. The court of errors and appeals sustained him.
In Benvenute v. Voorhees, 7 N.J. Mis. R. 580;146 Atl. Rep. 677, it is stated as follows:
"This is a suit against an executor. The proofs in the district court showed that some one had seen the plaintiff loan to the defendant's testator money which he told others he had borrowed. The plaintiff testified that the money had not been repaid, and was still due and payable.
"The proofs consisted of letters from the testator, in which he admitted that he owed the plaintiff money which would be repaid. These letters were necessary to take the case out of the six-year period of limitation.
"It seems to us that the action of the trial judge in giving judgment for the plaintiff did not offend either the Evidence act (2 Comp. Stat. 1910 pp. 2216 et seq.) or the statute of limitations. 3 Comp. Stat. 1910 p. 3162.
"The judgment is affirmed."
In Bankers Trust Co. v. Bank of Rockville, 114 N.J. Eq. 391,
the court, among other things, said:
"The bar of the statute extends to all transactions with, or statements by, the testator or intestate represented in the action, unless the representative offers himself as a witness on his own behalf, and testifies to a transaction with or statement by his testator or intestate. The design of the rule of evidence prescribed by this statute is to produce equality between the parties, by silencing the one who may, by his own mouth, be able to testify to transactions and conversations with the decedent, possibly to the disadvantage of his estate, unless the representative of that estate should, by his own conduct, remove the interdict. Hoffman v. Maloratsky, 112 N.J. Eq. 333. The test laid down for ascertaining what is a `transaction with' the deceased, within the intendment *Page 139 
of the statute, is `to inquire whether, in case the witness testified falsely, the deceased, if living, could contradict it of his own knowledge.' Van Wagenen v. Bonnot, 74 N.J. Eq. 843;Campbell v. Akarman, 83 N.J. Law 567."
I think under the principles enunciated in the last cited case, as well as Rogers v. McKenna, supra, and Benvenute v.Voorhees, supra, the letters are admissible in evidence and consequently should, and will be considered as part of the testimony in the case.
It is contended by the complainant that the complainant was not in duty bound to give releases when demanded by the defendant because the mortgage was in default at the time of the demand; he cites in his support Chatsworth Estates Company of New Jersey
v. Chattsworth Estates Company of New York, 121 Atl. Rep. 517.
But in that case Vice-Chancellor Church found that the covenant to release was made without consideration and accordingly was unenforceable; and there was no demand by the mortgagee of the release money.
Vice-Chancellor Fielder in Vanarsdale v. Gorenflo, 93 N.J. Eq. 486,
said:
"It is my conclusion that under the release clause contained in the mortgage, the privilege given to the mortgagor and her assigns to receive releases for lots of a certain size, at a specified rate per front foot, is not limited as to the time within which it should be exercised by one who purchased from the mortgagor before the principal fell due, and that Tinfowitch, being such a purchaser and having demanded a release before the bill in this cause was filed, accompanying his demand by tender of a proper sum of money, was entitled to receive a release, although his demand was made after the maturity of the debt * * * (citing cases). Tinfowitch should have completed his tender after this suit was commenced by paying into court the amount he claims complainant should have accepted when he filed his answer. He may now pay into court $320, which, I believe, is the amount specified in the bond and mortgage for a release of the premises in question, with interest on that sum to be computed *Page 140 
from the date to which interest was last paid complainant, to the time of payment into court. Or, if complainant will waive payment into court and will execute and deliver a release to Tinfowitch, such payment may be made direct to complainant. In any event, complainant will be decreed to deliver a release to Tinfowitch."
The same vice-chancellor in Malba Terrace Corp. v.Portaupeck Properties, 105 N.J. Eq. 453, said:
"The release clause as contained in the mortgage was not limited as to the time in which it should be exercised by those who purchased lots from the mortgagor before the principal fell due and the answering defendants, being such purchasers, are entitled to have their releases upon payment of the proper sum, although demand for the releases was made on their behalf after maturity of the mortgage debt and after the bill was filed.Hall v. Home Building Co., 56 N.J. Eq. 304; American Net, c.,Co. v. Githens, 57 N.J. Eq. 539; Ventnor, c., Co. v. Record,c., Co., 79 N.J. Eq. 103; Harris v. Pearsall, 83 N.J. Eq. 472.
 * * * * * * *
"The complainant did not refuse the tender and decline to execute a release because the amount tendered was insufficient; its refusal was put on the ground that the defendants had no right to a release. It had then taken the position that no matter what amount less than the entire principal and interest due on its mortgage was tendered, it would not release, and having taken that position it should not now be heard to complain of the insufficiency of the tender. At one of the hearings in this cause, the defendants tendered the complainant in open court the sum specified in the mortgage for a release of the eighty-one lots, with interest from October 1st, 1928, together with $5 for drawing the release and all costs which might be taxed against the defendants, which offer was refused for the reason before stated. The complainant's refusal to accept anything less than the full amount of principal and interest, excused the defendants from making an actual tender. Meyer v. Reed, 91 N.J. Eq. 237." *Page 141 
The defendant Walter O. Spannhake, in the amended answer tendered himself ready, able and willing to pay the release money. The same demand was made in the pleadings, and the same tender was made in open court at the opening of the hearing. The complainant refused to accept the tender for the reasons, as expressed by his counsel at the hearing, that he was not obliged to make any releases once the mortgage was in default. Those expressed sentiments of counsel are not in accord with the cases last cited.
A demand for a release was made on November 12th, 1930, for a plot of ground comprising less than an acre and the demand was accompanied by a check of $3,000 (Exhibit D-3). The decedent mortgagee on receipt of this demand, wrote the defendant Spannhake that it was impossible for him to care for any business (Exhibit D-4). On December 3d 1930, a demand was made for a release of a plot two hundred feet by two hundred and fifty feet (Exhibit D-5). The mortgagee did not grant the release demanded but advised Spannhake that he was "still sick." On March 16th, 1931, Spannhake again wrote to the decedent mortgagee requesting a release of part of the mortgaged property, stating that he would pay for the same. The decedent mortgagee in reply wrote on March 19th, 1931 (Exhibit D-10), that he could not release without getting the proper proportion of the mortgage and knowing the possible effect of the release on the value of the remainder of the property. To which last letter Spannhake replied (ExhibitD-11) and requested a release of the designated portion of the mortgaged property and tendered himself ready to pay $1,500 for the same — which sum was greater than the proportion fixed by the said covenant. The area of the property last mentioned was less than one-half an acre, and counsel contends that the tender of the last mentioned amount was good and sufficient; but the decedent mortgagee did not give a release as requested. From April 13th, 1932, to June 10th, 1932, demands for releases were made (Exhibits D-12 to D-16), but none were given. From December 4th, 1933, to the date of the foreclosure demands for releases were made (Exhibits D-17, 18, *Page 142 24 and 26). They were not given. The tender for those last mentioned releases, counsel for the defendants urges, was kept alive by the pleadings filed herein, and, further, continued by his opening to the court at the hearing. The defendants contend that the failure and refusal of the complainant and the decedent mortgagee to grant the releases requested, in view of the language of the covenant, is willful and wrong. Brown v.Honniss, 70 N.J. Law 260; Cohen v. Cyzam Realty Co., 3 N.J.Mis. R. 1028; 130 Atl. Rep. 440.
Where the mortgagee's conduct of delay in giving releases of part of the mortgaged premises, under a covenant in the mortgage, unjustly prevents the mortgagor from exercising his expressed privilege under the covenant, his representative cannot with good grace complain of defendants laches in demanding such releases.
The defendants say that they are not guilty of laches; and that there is no evidence indicating that there was any change of position upon the part of the complainant as a result of any delay upon the part of the defendants in asserting their cause through their counter-claim filed herein. Curtis Warner Corp.
v. Thirkettle, 99 N.J. Eq. 806; Hinners v. Banville, 114 N.J. Eq. 348.
The decedent was ill for some time prior to his demise in June, 1932. This action was subsequently instituted by his executor. I do not feel that the defendants delayed claiming their rights and that they are in laches.
Counsel for the complainant raises the question that there could be no proper tender without the accompaniment of cash. The conduct of the mortgagee decedent obviated that requirement. One of his letters said: "I can only grant a release upon receipt of a proper proportion of the release money, and after consideration what the effect of the release would be upon the value of the remainder of the property." Those conditions laid down by the decedent mortgagee were without right, or warrant, since the covenant of release was the proper guide under the circumstances.Malba Terrace Corp. v. Portaupeck Properties, supra; Meyer v.Reed, 91 N.J. Eq. 237. *Page 143 
I am of the opinion that the attitude of the decedent mortgagee was a planned and studied course of conduct not to grant the releases. Neither the decedent mortgagee, nor the present complainant, ever offered reasons for not granting the releases on the tender of the defendants, because it was not made in cash.
The defendant counter-claimants are asserting a legal cause of action claiming damages resulting from the failure of decedent mortgagee and the complainant herein to give the releases which they claim the covenant in the mortgage entitles them to; and they ask an affirmative decree for damages and cancellation of the mortgage. Renwick v. Hay, 90 N.J. Eq. 148; CommonwealthQuarry Co. v. Gougherty, 105 N.J. Eq. 642; 149 Atl. Rep. 356.
I believe the defendants have established the allegations of their counter-claim. But I think that the damages should be passed upon by a jury and I prefer to have such a body pass upon the amount, and shall so decree. I shall, therefore, hold the bill of complaint in accordance with the provisions of section 8 of the Chancery act of 1915, until the question of damages be determined by a jury.