[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 341 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 342 
The plaintiff, as executor under the last will and testament of Henry D. Wieand, deceased, seeks the construction of paragraph 2, sub-paragraph D of the last will and testament of the said Henry D. Wieand, in order to ascertain whether said paragraph discharges any and all debts due from and owing by Bessie M. Wieand, widow of decedent, and Franklin D. Wieand, Jr., brother of decedent, to the said testator at the time of his death.
In the event the determination of the above question is that the will does not discharge such debts, then the plaintiff further seeks a judgment on certain promissory notes made by Bessie M. Wieand and Franklin D. Wieand, Jr., to the value of the alleged collateral security therefor, and a determination of the title to various securities appearing in an account of Bioren 
Co. in the names of the said Bessie M. Wieand or Franklin D. Wieand, Jr., or in the names of Franklin D. Wieand, Jr. or the deceased.
The defendant Franklin D. Wieand, Jr., sets up by way of defense in his answer that (1) the alleged promissory notes are barred by the statute of limitations; (2) release by the decedent; (3) the transactions involving the stock or other securities were purchased for him by the decedent as an outright gift, and (4) the letters issued to plaintiff were fraudulently obtained. At the time of trial, however, said Franklin D. Wieand, Jr., advised through counsel that he did not desire to participate further in the proceedings.
Bessie M. Wieand sets up by way of defense (1) a denial that she ever owed the decedent any sum of money; (2) that there was no consideration for her promissory note, and (3) the securities carried on the books of Bioren Co. in her name were a gift to her, subject to the repayment to Bioren Co. of the amount due said Bioren Co. for the purchase thereof. *Page 344 
At the time of trial, J. Raymond Leek, the executor, was sworn as a witness and testified that he had found certain promissory notes among the assets of the decedent, said notes being made by Franklin D. Wieand, Jr., payable to the order of Henry D. Wieand. He testified as well that he had discovered among the assets of the decedent two certain promissory notes each in the sum of $891,275, payable to decedent and signed by Bessie M. Wieand. The executor testified that he was familiar with the signatures of Franklin D. Wieand, Jr. and Bessie M. Wieand and that the signatures appended to the said promissory notes were their respective signatures; that he had made a demand for payment of the several notes and such payment had been refused. The executor further offered two certain letters from Bessie M. Wieand, which read as follows:
 "Philadelphia, Pa. April 25, 1941
Bioren Co. 1508 Walnut St. Philadelphia, Pa.
Gentlemen:
This is your authority to transfer to Mr. Henry D. Wieand, all dividends and interest received by you for my account.
 Very truly yours, Bessie M. Wieand."
"Mr. Henry D. Wieand, 109 South Franklin Avenue, Margate, N.J.
Dear Sir:
In consideration of moneys advanced me at various times, I hereby assign to you all interest and rights or equities that now exist or may exist in the future in my accounts carried by the firm of Bioren Co. in Philadelphia.
The securities and equities, which may vary from time to time, are your collateral as protection for the moneys and/or securities advanced to me.
These accounts with Bioren Co. should not be an asset of my estate unless the equities shall be sufficiently large to liquidate my liability to you.
In view of the above, this agreement shall be a lasting one, or until your interest has been entirely satisfied.
A copy of this agreement is being forwarded to Bioren Co. so that they shall be aware of your claims to the equities in my account.
Yours truly,
 Bessie M. Wieand." *Page 345 
The former of these letters was found in the files of Bioren 
Co. and the latter among the papers of the decedent.
On cross-examination of the executor, objection was made by his counsel to various questions propounded by counsel for decedent's widow, referring to the handwriting on the note made by Bessie M. Wieand, and as well to questions regarding an attempted ascertainment of whether any consideration was ever paid to Bessie M. Wieand. The latter questions required the plaintiff to testify concerning information obtained from other books and records of the decedent.
The theory upon which these objections were made was that underR.S. 2:97-2, which reads in part as follows, the defendant was barred from attempting to elicit such testimony:
"When one party to any civil action is a lunatic suing or defending by guardian or when one party sues or is sued in a representative capacity, no other party thereto may testify as to any transaction with or statement by the lunatic while of sound mind or with or by the decedent, unless:
"a. The guardian of the lunatic or the representative of the decedent offers himself as a witness on his own behalf, andtestifies to any transaction with or statement by his testator,
intestate or ward, in which event the other party may be a witness on his own behalf as to all transactions with or statements by the lunatic while of sound mind or by the decedent, which are pertinent to the issue." (Underscoring mine.)
As a particular authority, the plaintiff cited Pontery v.Peters, 118 N.J. Law 581; 194 Atl. 180. In that case the court held that the mere presentation of a promissory note found among the assets of a deceased and proof of demand of payment by the executor and refusal thereof was not such testimony by the representative of the deceased to a transaction as would serve to lift the bar and permit the defendant to testify as to statements by the deceased.
Here, however, we are faced with a different situation, distinguishable from that present in Pontery v. Peters, supra.
The testimony which was received in the matter sub judice over objection, and subject to a motion to strike, was attempted to be elicited upon a cross-examination of the executor of the testator. It concerned itself, first, with a cross-examination of the executor concerning the physical condition of the promissory *Page 346 
note about which he had testified upon direct examination. Second, it concerned itself with the question of whether the executor had any knowledge, which must have been obtained from the records of the decedent, which would have a bearing on the consideration for the promissory note.
It is to be noted at the outset that the statute in question inhibits or prohibits any "other party" from testifying unless the door is opened by the action of the representative in offering himself as a witness on his own behalf and testifying to any transaction or statement by his testator. This section does not prohibit the representative from so offering himself as a witness, but serves as an inhibition only so far as any other party to the suit is concerned.
The purpose of this act, as has been stated in numerous cases, was to obtain
"equality between the parties to such a suit, by silencing the one who may, by his own mouth, be able to testify to transactions and conversations with the decedent, possibly to the disadvantage of his estate, unless the representative of that estate should by his own conduct, remove the interdict; that neither the language nor the reason of the legislation extends the disability beyond transactions and conversations in which the decedent participated."
Pontery v. Peters, supra; Bankers Trust Co. v. Bank of RockvilleCenter Trust Co., 114 N.J. Eq. 391; 168 Atl. 733.
One of the tests laid down for the ascertainment of what constitutes a transaction with a deceased is "to inquire whether in case the witness testified falsely, the deceased, if living, could contradict it of his own knowledge." Bruen v. Spannhake,118 N.J. Eq. 134; 178 Atl. 73. The proof of the insured's written statements do not offend against the provisions of the statute. Metropolitan Life Insurance Co. v. Lodzinski,122 N.J. Eq. 404; 194 Atl. 79; Bruen v. Spannhake, supra;Hollingsworth v. Lederer, 125 N.J. Eq. 193;4 Atl. (2d) 291.
Insofar as the promissory note itself is concerned, there appears no reasonable ground why, after the executor has identified the signature of the maker, he should not be asked about the balance of the handwriting on the same, and interrogated about the physical aspects thereof. Having offered *Page 347 
and identified the document, he has laid himself open to cross-examination concerning the instrument itself. This can be considered neither a "transaction" nor a "statement" of the deceased. It is limited to the description of the written instrument.
The cross-examination relating to the problem of consideration is as well permissible. An answer to such inquiries required the executor to disclose what he had learned from the books, records and assets of the testator, among which, he testified upon direct examination, he had discovered the promissory note. The decedent could not, if living, under the circumstances, deny that he made the entries in his own handwriting in his own books, within the reasoning of Hollingsworth v. Lederer, supra; Metropolitan LifeInsurance Co. v. Lodzinski, supra, and Bruen v. Spannhake,supra.
The reason for the above statute is, as has been stated, to maintain equality between the parties and to prevent a party to such action from testifying to transactions and conversations with the decedent, possibly to the disadvantage of his estate, where such a decedent, having been silenced by death, is not able to controvert the testimony. We do not, in this instance, have any such problem, since it is presumed that the representative of the estate will not only testify honestly and sincerely, but also that he is interested in an advantage to the estate and not to a disadvantage.
The rationale of the reasoning which prevents any other party from testifying about transactions or statements by a deceased evaporates into thin air in the light of the present facts. Why should an executor hide behind the protective cloak of the statute and refuse to disclose whatever facts might appear among the records of the deceased which would have a bearing on the transaction upon which he has brought suit? Neither equality nor public policy is served by a principle which could permit an executor to refuse to present all the evidence under his control which might have a bearing on the transaction upon which suit has been brought. The deceased could not have disputed his own written records. Where an executor brings suit upon a transaction had with his testator, he may be cross-examined *Page 348 
upon any facts which he had discovered in the books and records of the testator reflecting upon such transaction. The objection to the cross-examination and motion to strike the testimony is denied.
It is held, therefore, that cross-examination of the executor concerning the physical aspects of the note and the attempt to ascertain the consideration for the same was proper. The objection and motion to strike will be denied.
As a second question concerning evidence, the defendant objected to the introduction of certain books and records of the decedent, on the theory that they were self-serving declarations and did not serve to prove money loaned and advanced by the deceased to the two makers of the notes. It is conceded that they were not admissible to prove a loan. Hauser v. Leviness,62 N.J. Law 518; 41 Atl. 724; Hodgson v. Harris, 8 N.J. MiscRep. 188. They were not offered for this purpose but were offered rather for the limited purpose of aiding the court in construing the will in order to ascertain whether the will intended to relieve the widow and brother of the testator from any debts to the estate.
Extrinsic testimony is admissible to aid the court in attempting to ascertain the intent of the testator. Noice v.Schnell, 101 N.J. Eq. 252; 137 Atl. 582. For this limited purpose the books and records were admissible.
I find as a fact that the testator did not intend to make an outright gift of the securities standing in the names of his widow and his brother, respectively, on the books of Bioren Co. He at all times exercised complete control over such accounts, including the use of dividends for his own benefit, the deposit of funds when required, the purchase of securities of his own selection. The receipt of the promissory notes from his said brother and wife, the notations concerning collateral on the brother's promissory notes, shed further light upon his intentions. Insofar as the brother is concerned, the retention of some securities in deceased's own account, in some instances the continuance in his name, the statements signed by the brother denoting their correctness, all help to exhibit decedent's intent not to make an outright gift. The manner in which statements *Page 349 
of his worth were prepared seems to me to bear out the executor's contention that the testator did not intend to make an outright unencumbered gift. What was intended was to make a gift after repayment to him of this initial investment. The promissory notes were evidence of the debt which was collaterally secured by the various securities purchased. From the manner in which the testator regarded these promissory notes and securities, I am satisfied that he intended to hold the makers only to the value of such securities.
Paragraph 2, sub-paragraph D reads as follows:
"(d) I direct that neither the principal nor the income payable, or to become payable, to any of the beneficiaries under this my Will, shall in anywise be liable to any of their debts, contracts, liabilities or engagements, but that the same shall be paid to them free and clear therefrom, and that none of my said beneficiaries shall at any time have any right of assignment, anticipation or alienation of any of their rights or interests under this my Will."
The testator has thereby created a spendthrift trust. Under the facts here present, no part of the income made payable to either cestui que trustent, who are debtors of the estate, is liable to application for payment of their said debts. The debt is not itself cancelled but recourse for the payment thereof cannot be had against the income from the trust estate. The resulting conclusion of the original intent of testator to consider the various securities as collateral for the notes, brings this matter within the reasoning of Brown v. Corn Exchange NationalBank, 137 N.J. Eq. 507; 45 Atl. (2d) 668. It is therefore here held that the plaintiff is entitled to the delivery of the securities standing in the Bioren Co. account in the name of Bessie M. Wieand and Franklin D. Wieand, Jr., and the other securities of Franklin D. Wieand, Jr., however held by deceased, since the value of such securities is less than their respective note obligations, and that they are entitled to receive the income as provided in the will, free from the obligation of their debts.
Since the defendant, Franklin D. Wieand, Jr., has refused to participate in the trial of this matter, it is presumed that he has discontinued or waived his defense of the statute of limitations. In any event, the testimony as to the law of the *Page 350 
State of Pennsylvania, where these promissory notes (contracts) were made, demonstrates that they are regarded as a specialty. As instruments under seal, the statute of New Jersey has not tolled and the plaintiff is not barred from a recovery. The remedy is regulated by the state where the action is brought. Jaqui v.Benjamin, 80 N.J. Law 10; 77 Atl. 468.
On the question of fraud in connection with the original issue of letters of administration, it is here held that there was no proof of any such fraud. This allegation found its supposed foundation in a claim that the testator's residence and domicile at death was somewhere other than New Jersey. It is here held that from the proof submitted, the testator was domiciled and resided in the State of New Jersey at the time of his death.