30 N.J. Super. 203 (1954)
104 A.2d 61
ROBINSON G. HOLLISTER, PLAINTIFF-RESPONDENT,
v.
THEODORE FIEDLER, EXECUTOR OF THE ESTATE OF WILLIAM C. FIEDLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1954.
Decided March 18, 1954.
*205 Before Judges EASTWOOD, JAYNE and CLAPP.
Mr. Joseph Bigel argued the cause for appellant (Messrs. Bruck & Bigel, attorneys).
Mr. Harold D. Feuerstein argued the cause for respondent (Mr. Lester Sandles, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
A panoramic exposure of the factual background of this litigation is contained in a previous decision of the Appellate Division reported in 22 N.J. Super. 439 (App. Div. 1952). To reproduce or redesign it here is inexpedient.
*206 It is, however, informational to relate that in conformity with the mandate of the former appeal a further hearing was had in the Chancery Division at which testimony was introduced relative to the value of the list of insurance policy expirations to the end that an accurate determination of the book value of the shares of the capital stock of Fiedler and Hollister, Inc., should be made. Additionally, to correct an inadvertent omission discovered in the consideration of the prior appeal, the ownership of the one share of stock evidenced by certificate No. 7 was by supplemental pleadings brought in issue.
A final judgment eventuated by which the defendant was directed specifically to perform the terms of the option agreement of May 1, 1948, the plaintiff was adjudged to be the owner of the designated one share of stock, and the cross-claim and counterclaim of the defendant were dismissed. Such is the judgment now before us for appellate review.
Collectively, the principal questions projected for decision by the present appeal may be merged into two. Did the trial judge manifestly err in resolving that the ten shares of the deceased stockholder subject to the option agreement had no book value? Did he also err in adjudging the plaintiff to be the owner of the one share represented by stock certificate No. 7?
In approaching the consideration of those questions, let us divulge that we appropriately accept the prior decision of the Appellate Division as a declaration of the law of the case. Then we must be mindful that the plaintiff's cause of action is one for specific performance. Next we must be observant of the pertinent terms of the option agreement, such as (a) which obligates the survivor to "give written notice of the exercise of this option within sixty (60) days of such death to the personal representative of the deceased party * * *," and (b) which further requires the survivor who exercises the option within 30 days thereafter to tender to the legal representative of the deceased party "the book value of the shares of stock of the Company * * *."
We may then recognize the respective concessions. It is *207 acknowledged by the defendant that the plaintiff gave timely notice of his exercise of the option. It is admitted by the plaintiff that he did not make any monetary tender in payment of the stock of the deceased because in his opinion it had no book value at the time of the death of the decedent.
It is not inappropriate to appreciate that in the circumstances of the present case we need not be concerned with whether equity itself exacts the duty of making a tender. Here the necessity of the tender is the express stipulation of the contracting parties. Moreover, in the complaint the plaintiff alleges that he "has complied with the terms of the contract respecting the giving of written notice and the tender of the book value." Those allegations are controverted by the averments of the defendant's answer.
Noticeably the plaintiff did not allege his ability, readiness and willingness to pay such sum as the court should determine to be the book value of the stock. It is the general rule that he who seeks specific performance of a contract must show himself ready, desirous, prompt and able to perform the contract on his part. Meidling v. Trefz, 48 N.J. Eq. 638 (E. & A. 1891); Korb v. Spray Beach Hotel Co., 24 N.J. Super. 151 (App. Div. 1952). The plaintiff neither tendered nor expressed a willingness to pay anything. Hence his equitable right to the specific performance of the agreement by the defendant depended basically upon proof that the stock had no monetary value within the import of the construction ascribed to the option agreement by the prior decision.
Where jurisdiction exists, the equitable remedy of specific performance is not one of positive right. Cline v. Kurzweil, 141 N.J. Eq. 508 (Ch. 1948), affirmed 1 N.J. 407 (1949). The equities may be made obscure by the special exigencies and facts of the particular case. Where the amount of the purchase price is to be determined by a designated standard or method and it is thereby reasonably ascertainable, and the plaintiff alleges his ability and readiness to pay the sum so calculated, the power of the court to fix the price upon the payment of which specific performance *208 will be decreed is indubitable. Vide, Fountain v. Fountain, 9 N.J. 558, 566 (1952).
If, however, in the present case the learned and experienced trial judge had concluded from his consideration of the evidence that the book value is unascertainable, we would have expected that the relief sought by the plaintiff would have been denied. We therefore recognize his conclusion as expressive of the conviction derived from the evidence that the stock had no monetary value whatever, hence a tender would have been incongruous. The trial judge stated: "I decide in the light of all the testimony that the defendant's attempt to establish book value for the lists of expiration has failed." In seeking specific performance the burden of proving the essential elements of his cause of action assuredly devolved upon the plaintiff.
Our attention is therefore guided to the testimony adduced at the hearing conducted pursuant to the remand. We note that the plaintiff did not offer any additional evidence. Counsel for the plaintiff obviously chose, despite the augmentation of the evidence by the defendant, to adhere to his original position that the audit prepared on a cash receipts and disbursement basis, disclosing that the liabilities exceeded the assets of the company, constituted proof that the stock had no "book value." This insistence is in the present appeal to be taken to mean that the evidence introduced by the defendant at the second hearing relative to the value of the expiration and renewal records of the insurance policies did not negative the plaintiff's proof of the absence of any book value of the stock.
The defendant called and interrogated three expert witnesses, two of whom had been engaged in the insurance business for a period of from 45 to 50 years. The experience of the third covered a span of 26 years. All of them testified that an expiration and renewal record is a recognized asset of an insurance broker's business. One witness characterized it as "stock in trade." All stated that such records have a value that is marketable. They all explained the established formula by which the value of such records is estimated.
*209 The experts then applied the formula to so much of the basic and essential information concerning the business of the company as had been supplied by the evidence and thereby expressed their respective opinions of the market value of the expirations. Mr. Luppy fixed the value at $35,000; Mr. Pruden determined it to be $16,500; and Mr. Clark calculated the value to be $30,000.
The trial judge resolved that "since the testimony which they gave depended upon the hypothesis which did not incorporate all of the elements with specificity I would have to disregard their testimony as to book and market value in the instant case."
An examination of the testimony of the experts discloses the specific elements of the business which were not considered in the appraisals, yet, having them in mind, the inescapable inference is that this asset of the company had some relatively substantial value which in turn gives value to the corporate stock. Remember the plaintiff claims the right to acquire the stock for nothing.
Another reason underlying the conclusion of the trial judge was that in the absence of an enforceable covenant by the plaintiff to refrain from availing himself of the list of expirations, the list would have no salable value in the general market.
That persuasion seems to emerge from a misconception of the nature of the issue intended to be determined by the remand of the consideration of the action. The unmistakable import of the decision remanding the cause was that in executing the option agreement the parties contemplated that the value of the list of expirations should be embraced in the determination of the assets of the corporation at the time of Fiedler's death, and that this asset should be associated with the other assets of the company in the ascertainment of the book value of the shares of stock.
The inquiry was expected to be devoted to the determination of the value of the list of expirations as an asset of the existing business of the company as a "going concern." The value of the shares of the capital stock of the corporation *210 reckoned with regard to all of its associated assets and liabilities was the sequel which was sought to be ascertained.
The testimony revealed that the company is the authorized representative of 15 or more insurance companies. It has been engaged in the insurance brokerage business for many years. The gross premiums derived from its business were in 1945, $67,704; in 1946, $111,523; in 1947, $198,545.06; in 1948, $176,085.07; in 1949, $156,591; in 1950, $143,726.11. In 1950, the year in which Mr. Fiedler died, the company was handling in excess of 2,000 insurance items. The annual share of the gross premiums to which the company was entitled averaged $24,200.43.
The incomplete audit upon which the plaintiff relied was admittedly made on a "cash receipt and disbursement basis" and calculated a deficit of only $1,214.54.
A familiar quotation permeating our reported decisions is that:
"The remedy of specific performance rests within the sound discretion of the court, and should not be granted unless the right thereto is clearly and conclusively established by the party seeking it." Kelleher v. Bragg, 96 N.J. Eq. 25 (Ch. 1924), affirmed 97 N.J. Eq. 547 (E. & A. 1925); Vacca v. Wilkens, 108 N.J. Eq. 331 (Ch. 1931); Vandermade v. Appert, 125 N.J. Eq. 366 (Ch. 1939); Mayo v. Borovsky, 135 N.J. Eq. 447 (Ch. 1944); Gulvin v. Sunshine Park, Inc., 137 N.J. Eq. 249 (E. & A. 1945); Beck v. Edwards & Lewis, Inc., 141 N.J. Eq. 326, 335 (Ch. 1948).
A suit of this nature in equity is wholly an affirmative proceeding. The mere fact of nonperformance is not sufficient; its object is to procure a specific performance by the defendant and the fulfillment of that object requires a clear, definite and precise understanding of all the terms of the contract, and those terms must be exactly ascertained before their performance can be enforced. Pomeroy, Specific Performance of Contracts (3d ed.), § 159; Alnor Construction Co. v. Herchet, 10 N.J. 246, 250 (1952).
Certainly the plaintiff has not clearly and conclusively established his right to the judicially enforced acquisition of the stock without the payment of any compensation whatever.
*211 Our consideration of the pertinent evidence, including that to which we have not expressly alluded, impels us to the conclusion that the shares of the stock of the company at the time of the death of Mr. Fiedler had a value manifestly in excess of the stated deficit. The judgment, in its relation to the direction of the defendant specifically to perform the option agreement by assigning and delivering the ten shares of the stock of the decedent to the plaintiff without the payment of any monetary consideration for it, and in its denial of the claim of the defendant for an accounting is reversed. The defendant is entitled to the accounting requested. Let the mandate so provide.
The evidence pertaining to the ownership of the one share of stock in the possession of the plaintiff is in a distinctly different state and in respect to that issue the judgment is affirmed.