ROBINSON G. HOLLISTER, PLAINTIFF-RESPONDENT, AND JEAN HOLLISTER, DEFENDANT ON CROSS-CLAIM-RE-SPONDENT, v. THEODORE FIEDLER, EXECUTOR OF THE ESTATE OF WILLIAM C. FIEDLER, DECEASED, DEFENDANT-APPELLANT.

Argued November 29, 1954—Decided January 17, 1955.

*Mr. Joseph Bigel* argued the cause for appellant (*Messrs. Bruck & Bigel*, attorneys).

*Mr. Harold D. Feuerstein* argued the cause for respondent (*Mr. Lester Sandles*, attorney).

The opinion of the court was delivered by

HEHER, J.   The inquiry here concerns the ownership of one share of the capital stock of Fiedler & Hollister, Inc., a New Jersey corporation, determinative of majority control; and the decisive point is whether evidence adduced from the plaintiff Hollister of an asserted transaction with the deceased Fiedler bearing upon the issue transgresses the policy of *N. J. S.* 2A:81–2, formerly *R. S.* 2:97–2.

At the outset, plaintiff held as his own title to 11 of the issued shares of the corporate capital stock; the deceased Fiedler then held ten shares in his own name and an additional share, it is conceded, in the name of his wife, Martha. to qualify her for service as a director of the corporation. the now disputed share that later, upon the death of Martha Fiedler, was placed in the name of the plaintiff Hollister's wife, for the same purpose.   Hollister and Fiedler had provided for continuing equal interests in the outstanding capital

stock. The judgment of the Superior Court determined that the particular share of stock "was originally held by Jean Hollister to qualify her as a director" of the corporation, "and was held by her in behalf of William C. Fiedler," but it was also adjudged that during his lifetime Fiedler "did surrender and deliver to the plaintiff, Robinson G. Hollister, said share of stock for the beneficial ownership of the plaintiff in order to induce" him "to remain in business with" Fiedler, and that ownership of the share was then in the plaintiff. This is the crux of the controversy.

The Appellate Division of the Superior Court affirmed the judgment in this regard, 30 *N. J. Super.* 203 (1954) ; and the case is here by certification at the instance of the defendant executor.

Fiedler died August 29, 1950. The original complaint in this cause sought from his executor specific performance of a mutual option formulated by Hollister and Fiedler, exercisable by either in the event of the death of the other, for the survivor's purchase of the deceased's shares of the corporate capital stock at "book value," if the survivor be "still in the employ of the Company," and his assumption of an undertaking to pay the widow of the deceased shareholder 25% of the company's net profits during her life "or until the death of the surviving party, whichever shall first occur." The option agreement recited that Fiedler and Hollister each was the owner of 11 shares of the corporate capital stock. Of this, more hereafter. There was also a separate agreement in writing for the employment of the plaintiff Hollister as general manager of the corporation for a term of five years. The complaint did not specify the number of shares held by Fiedler; it demanded judgment that defendant be directed to "endorse and deliver" to plaintiff the "shares of stock formerly owned" by the deceased Fiedler, and to answer in damages "for the breach of the agreement." The defendant executor answered denying plaintiff's continued employment by the corporation and tender of the book value of the shares, and by counterclaim alleged that plaintiff had "unlawfully retained possession and control" of the

company's "business and affairs, property, moneys and profits," and prayed for an accounting and restraint against plaintiff's "continuance" of the corporate business, and the appointment of a receiver for the corporation.

The Chancery Division of the Superior Court ruled that in "determining book value, good will is not considered as an element, unless the agreement so provides," and here "no mention is made of good will," and there is provision only for "book value"; that the shares of stock in question "had no book value at the time of Fiedler's death," and "the purpose of the parties to the agreement was that the survivor should have the decedent's shares of stock." There was judgment for plaintiff. The counterclaim was dismissed. *Hollister v. Fiedler*, 18 *N. J. Super.* 171 (*Ch. Div.* 1952).

The Appellate Division reversed and remanded the cause for an assessment of the book value of the stock as reflected by the worth of the "list of (insurance) expirations" and "other assets," taking account of liabilities. And it was also held that while the judgment awarded to plaintiff the share of stock standing in the name of his wife, Jean, who was not then a party to the suit, and "there is some testimony concerning it," the question of title was not raised by the pleadings, and "neither the complaint nor the pretrial order was amended to comprehend that issue," and so "it was error for the court to include it in the judgment." 22 *N. J. Super.* 439 (1952).

After the remission of the cause, the defendant executor was given leave to amend the counterclaim to include a count alleging that the share of stock in question was issued to Jean Hollister "for voting purposes only and the legal ownership of the certificate of stock was and continued to be in" Fiedler and, upon his death, passed to his estate, but that ownership is now claimed by the plaintiff Robinson G. Hollister, and also to interpose a cross-claim against Jean Hollister as a "third party defendant," praying that the estate be adjudged the "legal owner" of the certificate of stock. Plaintiff and his wife Jean answered asserting the "beneficial ownership" of the certificate to be in plaintiff.

Testimony was taken pursuant to the mandate and the issue raised by the amended pleadings; and defendant agreed to the use of the evidence adduced on the original hearing save that "relating to any conversations or statements by the testator allegedly made or any transaction with the testator relating to the point on the ground" that the testator's personal representative "has not opened the door"; and there was judgment, heretofore adverted to, declaring that the "list of expirations of insurance policies" had "no value," and directing the defendant executor to "perform the option agreement" and to "execute and deliver" to the plaintiff Robinson G. Hollister, "without charge or costs therefor," an assignment of the deceased Fiedler's right, title and interest "in the 10 shares of stock (of the corporation) belonging to" him "during his lifetime," and holding the plaintiff to be the "true and lawful owner" of the certificate of stock here in controversy.

The Appellate Division, in the judgment referred to, 30 *N. J. Super.* 203 (1954), ruled that the plaintiff had not "clearly and conclusively established his right to the judicially enforced acquisition of the stock without the payment of any compensation whatever"; that the "shares of stock of the company at the time" of Fiedler's death "had a value manifestly in excess of the stated deficit," and to that extent the judgment was again reversed and an accounting directed. But it was there found that the evidence touching the beneficial ownership of the share of stock standing in the name of Jean Hollister "is in a distinctly different state," and the judgment was in that respect affirmed. And in this, the only issue raised by the appeal, there was error.

The finding made by the Chancery Division, thus sustained by the Appellate Division, that the share of stock in dispute was transferred by Fiedler to the plaintiff Hollister "in order to induce" Hollister "to remain in business with" Fiedler has nothing whatever to sustain it save the testimony of the plaintiff himself, given on the original hearing, of a parol agreement to that end; and plaintiff was not a competent witness in this regard by force of *N. J. S.* 2*A*:81–2, cited

*supra,* providing, *inter alia,* that when "one party to any civil action is a lunatic suing or defending by guardian or when one party sues or is sued in a representative capacity, no other party thereto may testify as to any transaction with or statement by the lunatic while of sound mind or with or by the decedent," unless (a) the guardian of the lunatic or the representative of the decedent offers himself as a witness on his own behalf, and testifies to any transaction with or statement by his testator, intestate or ward, in which event the other party may be a witness on his own behalf as to all transactions with or statements by the lunatic while of sound mind or by the decedent, which are pertinent to the issue, or (b) the "action is founded upon any allegation of fraud, breach of trust, willful default or undue influence, in which cases the defendant may be sworn and examined as a witness on his own behalf as to transactions with or statements by the lunatic or decedent."

Here, we have testimony by the survivor of a transaction with the deceased invoked to sustain the action against the latter's personal representative, absent which the action would fall. The insistence is that "fraud is charged," and so the action is within the excepted category delineated by subsection (b) of the statute, in that the second count of the defendant executor's counterclaim embodies an allegation that defendant "has made a demand for this share of stock of Robinson G. Hollister and Jean Hollister, his wife, and they have refused to turn over this share of stock to the defendant," but on the contrary they have from the date of Fiedler's death "fraudulently and willfully withheld said certificate of stock from the defendant for the purpose of assuming complete control over the affairs" of the corporation, and "by reason of their said actions and conduct, aforesaid, they did fraudulently and willfully assume complete control and domination over the affairs" of the corporate body, "to the complete deprivation of all rights of the defendant in and to" that entity.

It is insisted that "by virtue" of this averment "a person who heretofore was defenseless by reason" of the statute prior

to the amendment effected by *L*. 1931, *c*. 189, *p*. 474, is now "enabled to testify as to a transaction with a decedent so that honest claims may be sustained and fraud, duress and the like be negatived"; and reference is had to the animadversions of Dean Wigmore, *Wigmore on Evidence* (*3d ed.*), *section* 578, on the survivor's testimonial disqualification under the old rule.

But the reasoning evinces a misapprehension of the essential nature of the proceeding involving the disputed share of stock. In this regard, it is plainly not an action "founded" upon an "allegation" of fraud; it is rather a proceeding to settle the title to an intangible the beneficial ownership of which was concededly in Fiedler at the beginning, but is now claimed by plaintiff under an asserted parol transfer by Fiedler to him, supported only by his own testimony, Jean Hollister meanwhile holding only the bare legal title. The "fraud" charged was in no sense the gravamen of the action, but simply a characterization of the wrongful deprivation of property claimed by the adverse parties and the motive inducing what defendant maintains is an unfounded and unjust claim of property by plaintiff. The issue is in essence one of title and ownership alone; and if the wrongful assertion of title or claim is without more to be deemed "fraud" within the understanding and meaning of the statutory exception, then the statutory rule itself can have but little significance. If such were the case, the operation of the statutory regulation would be defeated by the bare allegation of a withholding of the pleaded right. A mere charge of consequential "fraud," however remote, illusive and insubstantial, would open the door to testimony of a claimed transaction with or statement by the deceased tending to prove the basic cause of action; and thus the statutory principle would be set at naught by indirection. The exception is to be given a reasoned interpretation consistent with the policy of the statute; in the view *contra* now suggested, the exception would annihilate the rule itself.

The legal title to this share remains in Jean Hollister on the company's books, although she endorsed the certificate

to her plaintiff husband sometime after Fiedler's death. An equal division of the outstanding capital stock was basic to the agreement between Fiedler and the plaintiff Hollister. The arrangement barred both assignment and pledge of the issued shares "without the prior written consent of the other," and "any such assignment, transfer or pledge shall be made expressly subject to the terms of this agreement," and each certificate of capital stock "shall be endorsed with reference to this agreement and with a statement that any transfer is subject to the terms hereof." 22 shares were issued at the outset. The plaintiff Hollister testified: "Fiedler had 11 and I had 11." As just said, Jean succeeded to the share allotted by Fiedler to his wife, to capacitate her as a director of the corporation, and for the same purpose. At the original hearing plaintiff, testifying from the stock book, said that on September 20, 1949, the estate of Martha Fiedler transferred the share to William C. Fiedler, and on the same day the corporation issued a certificate for the share to William C. Fiedler, and this certificate bears an endorsement of transfer on that day by Fiedler to Jean Hollister. On September 24, 1950, almost a month after Fiedler's death, the plaintiff Hollister addressed a letter to one Gardner in material part stating: "As you probably know I own half of the stock in Fiedler & Hollister, Inc. and I have the right to purchase William C. Fiedler's stock at book value on his death." He asked for the addressee's "opinion of the book value" of the stock as of the date of Fiedler's death. There is no suggestion that Fiedler authorized Jean Hollister, either orally or in writing, to transfer the share to her husband, or to any other person; indeed, so much is conceded. Jean Hollister was not sworn as a witness.

All this bears upon the question of title, the essential issue in the case; and the action to resolve the controversy cannot in right reason be denominated one founded upon an allegation of fraud within the intendment of the statutory exception.

In *Neuman v. Fantl*, 119 *N. J. Eq.* 351 (*E. & A.* 1936), upon which plaintiff sets great store, testimony was

received from one of the defendants of a conversation allegedly had with the plaintiff's decedent as within the statutory exception since the bill of complaint was "in the alternative: (a) to compel restoration of the jewelry by the defendants; (b) to set aside the gift thereof if made as improvident or the result of fraud or undue influence." That case compared with this illustrates the principle of the statutory policy and its limitations. There, the action was brought to invalidate a gift of an intangible as procured by fraud or undue influence. Here, the issue is whether there was in fact a transfer of the share pursuant to a parol agreement on a new consideration in disregard of the original stipulation of the parties for an equal division of the issued stock; the endeavor is to prove a transfer of an intangible by the testimony of the claiming party who by force of the statute is rendered incompetent as a witness in relation to transactions with the deceased. The question is simply this: May a transfer of the deceased's acknowledged ownership of the intangible be accomplished by the plaintiff's own testimony of such a transaction with the deceased? The question carries its own answer. An exception is to be strictly but reasonably construed. *New Jersey State Board of Optometrists v. S. S. Kresge Co.,* 113 *N. J. L.* 287 (*Sup. Ct.* 1934).

The aim of the statute is "to produce equality between the parties to such a suit, by silencing the one who may, by his own mouth, be able to testify to transactions and conversations with the decedent, possibly to the disadvantage of his estate, unless the representative of that estate should by his own conduct remove the interdict * * *." *Pontery v. Peters,* 118 *N. J. L.* 581 (*E. & A.* 1937). The test of a "transaction with" the deceased in the statutory sense is generally "whether, in case the witness testify falsely, the deceased, if living, could contradict it of his own knowledge." *Van Wagenen, Admr. v. Bonnot,* 74 *N. J. Eq.* 843 (*E. & A.* 1908). The substance of the rule is not to be whittled away by illusory distinctions. *Greenberg v. Feather,* 124 *N. J. L.* 469 (*Sup. Ct.* 1940).

■ Professor Wigmore's strictures are but one side of the coin.. The survivor's statutory disqualification is itself an exception to the statutory removal of the common-law general disqualification by interest, designed to secure equality between the adverse parties and thus to avert the danger of injustice and oppression by means of testimony of a surviving party under the influence of self-interest put beyond refutation or explanation by the death of the other party. *Bankers Trust Co. v. Bank of Rockville Center Trust Co.*, 114 *N. J. Eq.* 391 (*E. & A.* 1933) ; *Hoffman v. Maloratsky*, 112 *N. J. Eq.* 333 (*E. & A.* 1933). See also *Griswold v. Hart*, 205 *N. Y.* 384, 98 *N. E.* 918, 42 *L. R. A., N. S.*, 320 (*Ct. of App.* 1912) ; *Van Meter v. Goldfarb*, 317 *Ill.* 620, 148 *N. E.* 391, 41 *A. L. R.* 343 (*Sup. Ct.* 1935). The opposing thesis is that the rule is open, in almost equal degree, to all the objections successfully urged nearly a century ago against the interest-rule in general; that this survival "is based on a fallacious and exploded principle," and "leads to as much or more false decision than it prevents"; and "There never was and never will be an exclusion on the score of interest which can be defended as either logically or practically sound." *Wigmore, section* 578. It suffices to say, without necessarily suggesting concurrence in this critical estimate, that the New Jersey statute represents a considered policy based on the teachings of experience. Compare *Denning Warehouse Co. v. Widener*, 172 *F.* 2d 910, 13 *A. L. R.* 2d 669 (10 *Cir.* 1949).

■ And there was not a waiver of the benefit of the statute by the admission on the original hearing, at the instance of defendant, of the deposition of the plaintiff revealing, apparently for the first time, his claim of the beneficial ownership of the share now in controversy. The ownership of the intangible was not then in issue; and the deposition was received at the later hearing, following the amendment of the pleadings to raise the question of title, subject to defendant's timely objection on this score; and so there was not a waiver of the statutory incompetency. The rule of adoption of the whole of the deposition, receivable also as

such in subsequent litigation, has no application here. And this was a new issue, raised by amended pleadings and third-party cross-claim, and therefore a wholly different proceeding not within the principle invoked by plaintiff.

The adjudication of ownership of the particular share of stock in the plaintiff is erroneous; and the judgment is modified to accord with the foregoing findings and, as so modified, affirmed, and the cause is remanded for conforming proceedings.

BURLING, J. (dissenting). It appears to me that the defendant did not comply with *R. R.* 4:9–1, requiring pleading of the particulars of fraud and therefore the exception contained in *N. J. S.* 2A:81–2(b) does not apply.

However at the first trial depositions were offered by the defendant and received in evidence. These depositions disclosed Robinson G. Hollister's claim to ownership of stock certificate .No. 7 and the alleged transactions in support thereof between Hollister and Fiedler. Also at the first trial the defendant admitted that the plaintiff (Robinson G. Hollister) was entitled to introduce evidence in support of that claim because the defendant had "opened the door" by claiming that the share of stock was still a qualifying share only and had introduced evidence thereof. The Superior Court, Appellate Division, in the absence of resort by the plaintiff to *Rule* 3:54–4 (now *R. R.* 4:55–4) and *Rule* 3:15–2 (now *R. R.* 4:15–2) held that although fully tried the issue was not properly before the trial court. 22 *N. J. Super.*, at *page* 448. The plaintiff, Robinson G. Hollister, did not seek certification to review that prior determination of the Appellate Division.

On the remand, the parties stipulated that there were originally 22 shares of stock of Fiedler & Hollister, Inc., issued, 11 owned by Fiedler and 11 owned by Robinson G. Hollister, and that one of Fiedler's shares originally was issued to Mrs. Fiedler as a qualifying share and was subsequently (after Mrs. Fiedler's death) transferred to Jean Hollister as a qualifying share. Defendant resorted to and

relied upon the testimony and record of the first trial in support of the defendant's counterclaim and cross-claim and rested his case. The plaintiff and Jean Hollister then contended that the entire testimony (including testimony on depositions) offered at the previous trial should be received in evidence. The defendant, although he had already relied on this entire record, sought to exclude therefrom any references to transactions with the decedent, William C. Fiedler "subsequent to the date when this certificate was handed to Jean Hollister." The defendant's course seems to me to constitute a waiver at the second trial of defendant's right to object to any portion of the record reintroduced. Compare *Hoey v. Dell*, 10 *N. J. Super.* 185, 187 (*App. Div.* 1950).

Whether a waiver of *N. J. S.* 2A:81-2, *supra*, made by a decedent's representative at a first trial continues over to a second trial is a point argued upon which I express no view. The procedural course pursued in this matter does not present this point on an appropriate basis and the introduction of a new party between the first and second trials introduced an element that would weaken a declaratory expression of views on this point.

It is my opinion that the judgment of the Superior Court, Appellate Division, in the respects appealed, should be affirmed without modification. This results in sustaining the judgment finding the one share of stock to be Robinson G. Hollister's property.

Mr. Justice OLIPHANT authorizes me to state that he joins in the views expressed in this opinion.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, JACOBS and BRENNAN—5.

*For affirmance*—Justices OLIPHANT and BURLING—2.